[No. 4379. Decided April 21, 1903.]

HELGE A. HANSEN, *Respondent,* v. SEATTLE LUMBER COMPANY, *Appellant.*

NEGLIGENCE — LIABILITY OF MASTER — SUFFICIENCY OF EVIDENCE.

In an action by a servant for personal injuries, where there is no evidence, either direct or circumstantial, as to how the accident happened, but merely evidence of different causes that could have produced the injury, for some of which the master might have been liable, there can be no recovery unless it is established that the injury could have been produced in no other way than by some act or omission amounting to negligence on the part of the master.

Appeal from Superior Court, King County.—Hon. GEORGE MEADE EMORY, Judge. Reversed.

*Preston, Carr & Gilman,* for appellant.

*James J. McCafferty* and *Tucker & Hyland,* for respondent.

The opinion of the court was delivered by

FULLERTON, C. J.—This is an action for personal injuries. The jury returned a verdict for the respondent, who was plaintiff below, and this appeal is from the judgment entered thereon.

The appellant is engaged in the business of manufacturing shingles. On August 11, 1901, the respondent, who was then sixteen years of age, applied to appellant for employment, and was put to work by appellant's foreman at moving shingle bolts from one part of the mill to another. Later he was put to work nailing zinc strips on bands used for binding bundles of shingles. After he had worked at this for a short time, the foreman came to him, told him he had an easier job for him, and took him to a saw used for sawing the bands with which bundles of shingles are bound. This was a circular saw, about twelve inches in diameter, set into a flat-topped table, so that the top of the table was on a level with, or a little above, the top of the shaft to which the saw was fastened, and which formed its axis. The saw was run by a belt from a pulley on the main shaft of the mill to a pulley on the shaft of the saw. It revolved towards the operator. On the right of the saw (looking from the operator's position), and distant therefrom the width of the bands, was a guide between four and six inches high, against which boards were pressed when being pushed against the saw. To facilitate the operation of sawing, and as a protection to the operator, the appellant had fixed on the table what is called a "carriage." It was a flat

piece of board, made to run back and forth to the left of the saw from the operator's position, held in place by a tongue fastened to its under side, which ran in a groove cut in the top of the table. On the end of the carriage towards the operator was an endpiece of a proper height to furnish a rest for the ends of the boards when placed on the carriage for sawing. Still further back was the handle with which the carriage was operated. The pieces of board out of which the bands were made were cut to their proper length and thickness elsewhere, this saw being used to cut them to their proper width only. The manner of operating the saw was this: The operator would draw the carriage back a sufficient distance to allow a board to be placed between the saw and the endpiece of the carriage. He would then place a piece of board on the carriage, push it over against the guide, steady the piece with his left hand, take hold of the handle of the carriage with the other, and slide the carriage past the saw; cutting the board lengthwise to a proper width for a band. The carriage would then be drawn back, the board pushed over against the guide, and another piece cut off; the operation being repeated until the board was cut into bands. When the respondent and the appellant's foreman reached the saw, the foreman (so the boy testified) did not give him any oral instructions as to its method of operation, but started the saw without a word, picked up some boards, and proceeded to saw them; cutting up some dozen pieces. He then motioned to the boy, indicating that he wished him to try it. The boy then took hold of the work, and proceeded to cut the bands in the manner in which he saw the foreman do it. The foreman stood by and watched him until he had sawed some half dozen boards, when he went away. After a short time he returned, and watched

the boy operate the machine for a few moments longer; again leaving without saying anything. In less than an hour from that time the boy in some manner brought his hand in contact with the saw, seriously and permanently injuring it. The machine itself was standard, and the kind in use in nearly all shingle mills. The device called the "carriage," however, seems not to be in common use, if it was not altogether new to this machine. But it was not testified by any one that it increased the dangers of operating the saw, and it was in evidence that it greatly lessened them. The boy was alone when the accident happened. While on the witness stand he did not attempt to give any explanation as to its cause. Being questioned on this point by his counsel, he testified as follows:

"Q. Now how long do you think that you were to work on the machine before anything happened? A. About an hour. Q. Then what happened? A. I got my hand hurt. Q. Now, how did that happen? A. I don't know. Q. What were you doing at that time? A. Sawing the boards as I had always been doing—as he told me."

Nor is there elsewhere in the record anything which tends to show what caused the accident. Some evidence, however, was introduced tending to show what could have caused it. It was testified that any one of several things would cause the saw to pinch, and that the pinching of the saw would tend to tilt the carriage towards the saw. It was testified, also, that if sawdust, splinters, or other substances were permitted to collect under the carriage, or if it should be accidentally thrown out of the groove by the operator, it would have a tendency to tilt towards the saw, and, as a consequence, endanger the operator, but there was nothing in the entire record that shows or tends to show that the injury was caused by any one or more of these things.

The appellant made the contention in the court below, and contends here, that the evidence was insufficient to justify the verdict. This contention, we think, must be sustained. In order for the respondent to recover for his injury, it was necessary for him to show not only that the appellant had been guilty of negligence, but that such negligence was the cause of his injury. It is not necessary, of course, that the facts be proven by direct evidence. Circumstantial evidence of the fact is sufficient. But there must be some evidence, either direct or circumstantial, that there was negligence on the one side, an injury resulting in damages on the other, and that the injury and damages followed the negligence, and were produced thereby. The evidence here falls far short of this. It may be true that there was evidence before the jury from which negligence could be inferred. Doubtless it was the appellant's duty to inform the respondent of the hidden or latent dangers connected with the operation of the machine, and it was negligent in failing to perform that duty; and had it been shown by evidence, either direct or circumstantial, that the injury was caused by some one or more of the hidden or latent dangers which the respondent had not been warned against, the appellant would be liable in damages for his injuries. But there is no direct evidence as to the cause of the injury, and it is not proving his case by circumstantial evidence for the respondent to show that there were causes, for which the appellant would be liable, which could have produced the injury, without showing that it could not have been produced in any other manner, or in a manner for which the appellant would not be liable. As was said by Mr. Justice BREWER in *Patton v. Texas & Pacific Ry. Co.,* 179 U. S. 658 (21 Sup. Ct. 275):

"The fact of accident carries with it no presumption of

negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence.  .  .  .  That in the latter case it is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to  the fact that he was.  And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, where there is no satisfactory foundation in the testimony for that conclusion.  If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

Tested by these rules, the judgment cannot stand.  There is no evidence in the record that the negligence of the appellant caused the injury  for  which  the damages were awarded, and the jury's finding was based upon mere conjecture.

The judgment is reversed and the cause remanded, with instructions to dismiss the action.

MOUNT, ANDERS and DUNBAR, JJ., concur.