[No. 4607. Decided June 26, 1903.]

MARIAN ARMSTRONG et al., Appellants, v. TOWN OF COSMOPOLIS, Respondent.

MUNICIPAL CORPORATIONS — ACTION AGAINST FOR WRONGFUL DEATH — FAILURE TO PROVE MANNER OF DEATH — NONSUIT.

In an action against a municipal corporation to recover for wrongful death, alleged to have resulted from defendant's negligence in failing to provide guard rails for a foot bridge, plaintiffs were properly nonsuited, where there was no evidence showing that plaintiff had been upon the bridge at the time of his death, and the method of his death was merely a matter of conjecture from the fact that he had been found in the water near the bridge.

Appeal from Superior Court, Chehalis County.—Hon. MASON IRWIN, Judge. Affirmed.

Govnor Teats and W. H. Abel, for appellants:

"It is well settled that, where there is uncertainty as to the evidence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being disputed, fair-minded men will honestly draw different con-

clusions from them." *Richmond & D. R. R. Co. v. Powers,* 13 Sup. Ct. 749 (37 L. ed. 642); *Northern Pacific Ry. Co. v. Adams,* 116 Fed. 324; *Allend v. Spokane Falls & N. Ry. Co.,* 21 Wash. 324 (58 Pac. 246); *Philadelphia & R. Ry. Co. v. Young,* 90 Fed. 709; *Abrams v. Seattle & Montana Ry. Co.,* 27 Wash. 507 (68 Pac. 78); *Ziegler v. Spokane,* 25 Wash. 439; *Nelson v. Willey S. & N. Co.,* 26 Wash. 548 (67 Pac. 237).

*J. B. Bridges,* for respondent:

Probably the strongest reason for the court's taking the case from the jury was that the testimony of the appellants left it for the jury to speculate as to how and when deceased met his death.   Upon a very small amount of material testimony, the question of negligence is for the jury; but the evidence of the manner of death must be sufficient to convince the fair and unprejudiced mind.   *Sorenson v. Menasha Paper & Pulp Co.,* 14 N. W. 446; *Morrison v. Phillips, etc., Construction Co.,* 44 Wis. 405; *Fritz v. Salt Lake, etc., Light Co.,* 56 Pac. 90; *Corcoran v. Boston & A. R. R. Co.,* 133 Mass. 507; *Rebelsky v. Chicago & N. W. Ry. Co.,* 44 N. W. 536; *Roberts v. Port Blakely Mill Co.,* 30 Wash. 25 (70 Pac. 111).

The opinion of the court was delivered by

DUNBAR, J.—This action was brought for the wrongful death of husband and father, caused by alleged unguarded and unlighted sidewalks in the defendant town, Cosmopolis.   The town is situated on the Chehalis river.   First street, where the accident occurred, is a long street running parallel with the river, and one block back.   Crossing this street practically at right angles, and west of the business portion of the town, is a slough called "shingle mill slough," used by the shingle mill on the west bank as a log pond.   The tide ebbs and flows at this point to the extent

of about eight to twelve feet. There is no wagon bridge across the slough, but the town constructed across the same, and was operating at the time of the accident, a bridge about eight feet wide, which was used by pedestrians. The sidewalk along the north side of the street is a main thoroughfare, and a number of people reside on the west side of the slough, and use the bridge in going to and returning from the town. The sidewalk, including the bridge, is about three or four feet above high tide. Guard rails were originally placed along the sidewalk, but at the time of the accident, and for a long time prior thereto, the guard rails had been destroyed; and there were none in existence at that place. The complaint in substance charges that the plaintiffs' husband and father, in going to his home at the corner of Second and I streets, owing to the extreme darkness of the night, missed his way, and, instead of proceeding along I street, proceeded west on the sidewalk on First street, and when he had reached the east side of the bridge crossing the slough, there being no railing or guard, and the night exceedingly dark, and no lights provided by the said town, and it being impossible for him to see and know of the dangerous condition of the said sidewalk and bridge, he walked off from the sidewalk and bridge into the slough below, which at that time was filled by the tide, and was drowned. Damages were claimed in favor of appellant Marian Armstrong, wife of the deceased, in the sum of $10,000, and, for the benefit of the infant, William J. Armstrong, $5,000. At the close of the plaintiffs' testimony, the respondent made motion for nonsuit, based on the following grounds: (1) That the evidence thus far introduced shows no negligence on the part of the defendant; (2) that the evidence thus far introduced does show contributory negligence on the part of the plaintiffs' intestate, husband and father of the plaintiffs;

(3) on the ground that there is no evidence showing or tending to show that Mr. Armstrong, the husband and father of the plaintiffs, fell off the bridge as alleged in the complaint. This motion was sustained by the court, and from the judgment following such motion this appeal is taken.

There are several questions discussed in the brief of appellants, but it is conceded that the court granted the motion on the third ground alleged, viz., that there was no evidence showing or tending to show that the deceased fell off the bridge as alleged in the complaint. With the view that we take of the decision of the court on this proposition, it becomes unnecessary to discuss the other errors alleged. The testimony is brief, and shows that the deceased in company with a friend, both in an intoxicated condition, had been drinking at a saloon, and had been up until about two o'clock in the morning; that it was very dark, and that the friend undertook to show the deceased home; that when they arrived at the point where the deceased thought he was near his home, he told the friend, who had a lantern with him, that he was near home, and that it was not necessary for him to proceed with him further, and the friend returned to town. Not reaching home that night, search was made, and the body of the deceased was found, two days afterwards, just above the bridge on the slough. Some keys—which were claimed to be, and probably were, his—and a little money were found on the other side of the bridge, and about seventy-five feet from the body. A large overcoat, which the deceased had on when last seen, was also found in the slough, a few feet away from the body. This is all the testimony there is tending to show that the deceased fell off the bridge across the slough. He was not at this point when he was last seen, and it was not necessary for him to be there. The theory

8-32 WASH.

of the appellants is that deceased became lost and bewildered in the darkness, and stumbled over the side of this bridge into the water, where he was drowned.  It is earnestly insisted by counsel for appellants that this was sufficient testimony to go to the jury, and it was for them to determine whether it was sufficiently convincing to warrant a conclusion that deceased did fall off the bridge. But while it is true that the weight of the testimony is entirely for the jury, yet mere speculation and conjecture must not be confused with legitimate testimony.  There are many theories which might be advanced, which would be mere guessing, that would be as reasonable as the theory contended for by appellants.  Deceased might have fallen into the slough at another point and been washed up by the action of the tide to the location at which he was found.  He might have stumbled into the Chehalis river and have been carried by the tide to the place of his deposit.  He might, as many a man has done before, have concluded to throw himself into the slough with suicidal intent.  He might have been knocked into the slough by some one who had ulterior purposes to subserve.  The fact that his overcoat was not upon him is a very strong circumstance tending to show that he did not fall into the slough while walking along on his way home.  The whims which seize and control intoxicated men and the accidents that are liable to occur to them are so manifold that it would be the merest guesswork to undertake to account for the location of the body of the deceased at the point where it was found as shown by the record in this case.

We think there was no competent testimony adduced which should have been submitted to the jury.  The judgment is therefore affirmed.

FULLERTON, C. J., and MOUNT, ANDERS and HADLEY, JJ., concur.