[No. 6447. Decided December 22, 1906.]

WADDIE K. GARDNER, *Respondent*, v. ANDREW R. PORTER
et al., *as Porter Brothers, Appellants.*[1]

APPEAL — REVIEW — WAIVER OF NONSUIT — CHALLENGE TO SUFFI-
CIENCY OF EVIDENCE. Proceeding with the trial, after the overruling
of a motion for nonsuit, does not preclude the defendants from in-
sisting upon a motion for a directed verdict at the end of the case,
upon which the sufficiency of the whole of the evidence comes up for
review.

MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE — EVIDENCE —
SUFFICIENCY. In an action for personal injuries sustained by an em-
ployee, whose duty it was to remove temporary intersecting tram-
way rails from a railroad track upon the approach of a train, a non-
suit should be granted where it appears that he was struck while
standing near the crossing while a train passed, but was unable to
say by what he was struck, it appearing probable that the train
struck a slide rail which plaintiff had negligently failed to with-
draw a sufficient distance from the crossing; since the alleged proxi-
mate cause of the injury cannot be left to speculation or conjecture.

Appeal from a judgment of the superior court for Spo-
kane county, Poindexter, J., entered March 31, 1906, upon
the verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by an employee at the
intersection of a tramway track, through being struck by a
rail torn from the track by a passing train. Reversed.

*E. C. Macdonald* and *Donald F. Kizer*, for appellants.

*W. A. Garber* and *George N. Maddock*, for respondent.

HADLEY, J.—This is an action to recover damages for per-
sonal injuries. The defendants constituted a copartnership
under the firm name of Porter Brothers, and at the time of
the injury the plaintiff was in the employ of the defendants.
The plaintiff was working for the defendants at the terminal
grounds of the Spokane & Inland Railway Company, at Ferry

[1] Reported in 88 Pac. 121.

street in the city of Spokane, where the defendants were engaged in filling and grading said terminal grounds. For the furtherance of their operations at that place, the defendants had a tramway track for moving small cars from one part of the grounds to another. This tramway extended along Ferry street, and was intersected by a switch track of the Northern Pacific Railway Company. Where the tracks intersected, the defendants had their tramway tracks built up to a point near the switch tracks on either side. Across the switch tracks the defendants placed short rails that were not fastened down, and which could be taken up whenever a train or moving Northern Pacific cars came along on the switch track. The plaintiff was employed to be at that place, and watch for the approach of trains or moving cars on the Northern Pacific switch track. When he saw cars approaching, it was his duty to remove the two short rails, and after the train had passed, it was his duty to replace them. Not many trains passed over the switch tracks in the course of a day, and plaintiff was not very frequently called upon to remove and replace the rails. But it was his duty to be there ready to do so, and to act when the necessity did arise. He had been engaged there about five days when the accident for which he claims damages occurred.

A train was going by on the Northern Pacific track, when something struck one of the rails of the tramway track, which was in some way thrown against the plaintiff, and he thereby received the injuries for which he asks damages.

He alleges that the defendants negligently rendered the place unsafe and dangerous and neglected to warn him thereof, in the following manner: That on the day of the accident, the defendants placed the rails of the tramway track so close to the tracks of the Northern Pacific Railway Company that it was impossible for trains to pass without striking the rails of the tramway and thereby causing them to be thrown violently against anyone who should at the time be where it

was necessary for the plaintiff to be in order to discharge his duties; that after the place had been thus rendered unsafe, the plaintiff, while performing his duties and without knowledge of the unsafe nature of the place, was standing near the tramway and the railway track when a Northern Pacific train passed upon the railway track at an ordinary rate of speed, and struck the tramway rails, tearing them from the ties and hurling them violently against the plaintiff. The defendants denied negligence on their part, and pleaded contributory negligence and assumption of the risk on the part of the plaintiff. The cause was tried before a jury, and a verdict was returned in favor of the plaintiff, fixing his damages at $809.10. Judgment was entered for that sum, and the defendants have appealed.

Error is assigned upon the refusal of the court to grant a nonsuit at the close of the respondent's testimony. Respondent urges that appellants waived their motion for nonsuit by not standing thereon, and by proceeding to introduce testimony after the denial of the nonsuit. He cites the following cases: *Port Townsend v. Lewis*, 34 Wash. 413, 75 Pac. 982; *Elmendorf v. Golden*, 37 Wash. 664, 80 Pac. 264; *Conine v. Olympia Logging Co.*, 42 Wash. 50, 84 Pac. 407. So far as the motion for nonsuit itself is concerned, the contention is correct under the cases cited. That motion must be considered exclusively with reference to the testimony submitted by respondent before the motion was made. In *Port Townsend v. Lewis, supra*, the court said:

"By going on with the trial and introducing evidence on their behalf, the appellants waived any technical advantage they might have availed themselves of by such a motion."

At the close of all the testimony appellants moved that the court direct the jury to return a verdict for appellants. The motion was denied. It was based upon the insufficiency of the evidence, and appellants were not precluded from insisting upon the motion by reason of the fact that they had waived

the motion for nonsuit in the manner above stated. Upon this subject we further said, in *Port Townsend v. Lewis*:

"Of course, if the evidence of the respondent did not at that time warrant a recovery, and the defect in the evidence was not subsequently supplied, the appellants can now successfully urge that the evidence before the court is insufficient to justify the findings and judgment, but the court must look to the whole of the evidence to ascertain that fact, not alone to the evidence of the respondent."

It will thus be seen that, after waiving the nonsuit by proceeding with the trial, any challenge to the sufficiency of the evidence must be considered with reference to all the evidence, and not with reference to that of the respondent alone. In following this rule in *Conine v. Olympia Logging Co., supra*, we said:

"Having thus waived its right to stand upon the motion for nonsuit, it then became necessary to consider the case upon the whole evidence introduced by both parties."

The sufficiency of all the evidence to authorize recovery is, therefore, before us for review under the motion for a directed verdict made at the close of the introduction of testimony.

Respondent says that he stood between the two permanent rails of the tramway track some twelve or more feet from the Northern Pacific track, and that he had drawn the temporary rails from across the railway track to a position between the tramway rails. His theory is that the accident was caused by the cars striking the permanent rail of the tramway track, which he charges had been negligently placed too near the railway track. Other trains had, however, passed over the same track that day without accident, and it was conceded at the trial that the cars of the train which struck the rails were in their usual and proper condition. If the accident was caused by the train striking one of the slide rails, that fact would conclusively establish contributory negligence on the

part of respondent, because it was his express duty to remove these rails and draw them back far enough to escape contact with passing trains. We quote below from respondent's testimony:

"Q. How did you get hurt? A. I was standing on this tramway, and the train— some part of it caught hold of those rails and tore it up. Q. Which one did it take hold of? A. I don't know—the one on the north side was bent nearly double. Q. On what side. That side (indicating)? A. Yes, I think that would be it. The north side of the tramway the rail on the north side. Q. Now, which one of those rails was struck—where were you standing? A. I was standing about here (indicating), somewhere along about there. The rails were back along here, both of them were pulled down along here (indicating), and I was standing about three feet from the end, and this rail (indicating) was bent nearly double, and that one—the whole track was tore up, and that is where I got hurt when I was standing there. This rail here (indicating) was bent nearly double. Q. Where were these rails that you pulled back when this train came by? A. Where were they? Q. Yes, sir. A. They were lying right between the rails on the tram road. Q. How far from the Northern Pacific track? A. I don't know exactly how far, but it must have been 2½ or 3 feet. I generally pull them back clear out of the way, because that is as far as I thought there was any possibility of danger — of my being hurt. . . . Q. Do you recollect of the train striking the rail? A: The only thing I recollect was something hit it and knocked me down. It seemed like a dream. After I gave the signal to come on—I believe I was kind of waving at the boys, something like that, and that is the last I remember, when they got even with me, until I—the first thing I remember was when I woke up Mr. Childs was pouring water on me. That is the first thing I remember clearly. . . . Q. Now show the jury which rail was struck by this train. A. Well, that is a hard question for me. I can show you which one was bent. Q. Which one was bent? A. This one was bent; bent nearly double. . . . Q. Was this south permanent rail of Porter Brothers bent? A. I don't remember. Q. You didn't see it when— A. No. Q. . Was the south sliding rail of Porter Brothers bent? A. I don't know. Q. Did

you observe its location? A. No, sir. Q. Did you observe the position of the north sliding rail after the accident? A. No, sir. Q. Do you know whether it was bent or not? A. No, sir. Q. You didn't see it at all. You only saw this one? A. I only saw that one. When they fixed the track back I came to see that. Q. Now, you were standing at one of these sliding rails when the accident occurred? A. Yes, sir. Q. Were you standing between them? A. I don't remember where I was. I was standing back behind these rails. Q. I understood you to say on your direct examination that you stood between them. A. Between this one and that one back there (indicating). Q. Now, isn't it a fact that what caused the accident was that you didn't get that slide rail back far enough? A. If I hadn't, I wouldn't have motioned them to come across. Q. You were some distance back here? A. Yes, sir. Q. Did you see that rail? A. If that went back there to a certain place there it was far enough. Q. You could tell within two or three inches whether you were far enough, could you? A. I couldn't tell about two or three inches, but I never let it get that far. Q. Isn't it a fact that the cause of the injury was that something caught that slide rail just like that (indicating) and that that slide rail then tore the permanent rail and that that is what went over there? A. I couldn't say that it is a fact. I don't know whether it is or not. I don't think——. Q. And don't know that it is a fact that loose rail was bent? A. No, sir. Q. Did you examine it? A. No, sir. Q. You don't know whether it was bent or not? A. No, sir."

From the above evidence it will be seen that respondent does not know whether it was the permanent or a sliding rail that was first struck. If it was the north permanent rail, then it does not appear how respondent could have been struck. He stood between the two permanent rails of the tramway, and at the point where he stood the tramway rail was not torn from its fastenings to the ties, but remained solid. Between him and the railway track this tramway rail was bent, as expressed by respondent, "nearly double," which was explained to be about a right angle. The force of whatever struck the permanent tramway rail carried the far end

of it away from respondent and not toward him, while the end next to him remained unmoved. It is, therefore, inconceiv-- able how respondent could have been struck by that rail at the position he occupied. Neither his testimony, nor that of any other witness, shows that he was struck by that rail. He frankly admits that he does not know how, or by what, he was struck. When asked, on the theory of the defense, if one of the slide rails which it was his duty to place was not first caught and carried over against the permanent rail, thereby tearing the latter loose next to the railway track, he frankly said he did not know. Such was the theory of the defense, and, also, that respondent, who stood near the outer ends of the sliding rails, was struck by such sliding rail as it was shuffled and moved by the train. If such was the case, it was clearly due to respondent's own contributory neglect in not drawing the sliding rails to a sufficient distance. He says he thinks he drew the rails back two and one-half or three feet, but he based his idea upon that subject entirely upon the fact that he ordinarily drew them that far back. He ex- pressed no independent memory as to this occasion. The proximate cause of the accident and the consequent injuries, so far as the evidence discloses, are entirely within the domain of conjecture. We are unable to find in the entire evidence, when considered together, any basis upon which to establish negligence of appellants in the premises, unless we enter the realms of speculation, and we have frequently held that such a field is not a proper one for the jury. Mere evidence of dif- ferent causes that could have produced the injury is not suffi- cient. *Hansen v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457; *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Reidhead v. Skagit County*, 33 Wash. 174, 73 Pac. 1118; *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881.

For the foregoing reasons, we think the whole evidence did not make a case for the jury, and that appellants' motion

for a directed verdict should have been granted. The judgment is therefore reversed, and the cause remanded with instructions to vacate the judgment and enter judgment for the appellants.

ROOT, FULLERTON, and CROW, JJ., concur.

MOUNT, C. J. and DUNBAR, J., took no part.