[No. 7046.   Decided February 17, 1908.]

EMMA PETERSON *et al., Appellants,* v. UNION IRON WORKS, *Respondent.*[1]

MASTER AND SERVANT—NEGLIGENCE—CAUSE OF ACCIDENT—DEATH —EVIDENCE—SUFFICIENCY.  The evidence is insufficient to establish the cause of the accident whereby the operator of a ripsaw was killed, and a nonsuit is properly granted, where it appears that there was no witness to the accident, that the deceased had been struck in the abdomen by some blunt instrument, leaving a mark such as could have been made by a board which was found in close proxim- ity to the deceased's position in operating the machine, which board had indentations indicating that it might have been caught and thrown by the saw by reason of failure to guard the saw with a splitter, and where it was only by inference that it could be said that the saw was being operated by the deceased at the time of the accident.

SAME—EVIDENCE—ADMISSIBILITY—REMOTENESS.  In an action for the death of an operator of a ripsaw, where there was no direct evi- dence of the cause of the accident and at most only an inference that a board might have been caught and thrown by reason of lack of a guard or splitter, evidence of a defect in the saw table is in- admissible as too remote.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered February 21, 1907, granting a nonsuit, after a trial before the court and a jury, in an action for the death of a servant, the operator of a ripsaw.  Affirmed.

*A. E. Barnes, Geo. A. Latimer,* and *B. M. Branford,* for appellants.

*Post, Avery & Higgins,* for respondent.

RUDKIN, J.—The defendant is a manufacturing corpora- tion having its principal place of business in the city of Spo- kane.  At the time hereinafter mentioned it had installed in its establishment a ripsaw used by its employees in the manu- facture of flasks used in moulding.  The saw was twelve

[1]Reported in 93 Pac. 1077.

inches in diameter, and was situated upon, or attached to, a table about three feet in width and five feet in length, so that about four inches of the saw blade extended above the surface or plane of the table. It is customary to equip or guard saws such as this with a device known as a "splitter." The splitter consists of a piece of iron or steel, about the thickness of the saw blade, placed in an upright position, four inches back of the saw, the top of the splitter extending nearly to the top of the saw. The object of the splitter seems to be two-fold; first, to keep the board from pinching after it passes through the saw, and second, to prevent slivers and other material from catching on the saw at the rear, or dropping upon the saw and being hurled against the operator. The saw in question was not equipped with a device of this kind.

On the 25th day of August, 1905, one Nels Peterson was in the employ of the defendant, and was engaged in operating this saw. While thus engaged, he received an injury which resulted in his death some four or five days later. At the time the accident happened, the deceased was alone in the carpenter shop, and no living witness saw the accident or could explain how it happened. Indeed, it is only by inference that we can say that the saw was in motion or that the deceased was engaged in operating it at the time of receiving his fatal injury. An examination of the person of the deceased after the injury disclosed the fact that he had been struck in the abdomen by some blunt instrument which left a mark about four inches in length and one inch wide. A piece of a board about one by four inches and four feet in length, used in the manufacture of the flasks, was found after the accident in close proximity to where the operator would ordinarily stand in the discharge of his duties. This board had some indentations upon it, indicating that it might have been caught by the teeth of the saw and hurled against the deceased. These were the only facts or circumstances tending in the remotest way to show the cause of the accident or how it happened.

The theory of the plaintiffs was that the piece of board above described dropped or caught on the teeth of the revolving saw and was hurled against the deceased, and that the accident would not have happened had the saw been properly equipped and guarded. They contended, and now contend, that the jury might properly infer this from the testimony. The court below ruled otherwise, and granted a nonsuit, and from the judgment of nonsuit the present appeal is prosecuted.

In their brief the appellants make the following concessions: "The evidence in this case showed that the deceased was alone in said carpenter room at the time of the accident; hence, there is no living witness who saw the accident and can explain from his observation of same how it happened." Again: "So in this case there may have been a dozen or more different ways in which a similar piece of board might have come in contact with this saw and would have caused the same to be hurled back against the operator. A board might, for example, be dropped from his hand directly on top of the saw, either crosswise or otherwise, and be turned back against him, even though there had been a splitter behind the saw, and one can imagine various other reasonable ways that an accident might happen, even though a saw had been equipped with a splitter." Yet, in the face of these concessions, which are manifestly in accordance with the facts, the appellants earnestly insist that the jury might have adopted their theory of the accident, and that the inference to be drawn from the facts was exclusively for that body. With this contention we cannot agree. In *Patton v. Texas & Pac. R. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, the court said:

"The fact of accident carries with it no presumption of negligence on the part of the employer; and it is an affirmative fact for the injured employee to establish that the employer had been guilty of negligence. . . . That in the latter case it is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. And when the testimony

leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony; and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

This rule has frequently been applied in this court: *Hansen v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457; *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Reidhead v. Skagit County*, 33 Wash. 174, 73 Pac. 1118; *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831.

The court rejected testimony tending to show an alleged defect in the saw table, but the inference that the injury was caused by any such defect is even more remote than the inference we have been discussing. In view of the conclusion we have reached on the merits of the case, we will not consider or discuss the appellants' right to maintain this action under the factory act.

The judgment of the court below is affirmed.

HADLEY, C. J., DUNBAR, ROOT, MOUNT, FULLERTON, and CROW, JJ., concur.