[No. 7295. Decided October 15, 1908.]

MAY WHITEHOUSE *et al.*, *Appellants*, v. BRYANT LUMBER & SHINGLE MILL COMPANY, *Respondent.*[1]

DEATH—BY WRONGFUL ACT—PROXIMATE CAUSE—EVIDENCE—SUFFICIENCY. There is no sufficient evidence of the proximate cause of the death of plaintiff's decedent to warrant submitting the case to the jury, and a nonsuit is properly granted, where it appears that the deceased, a sawyer in a mill, was killed while all the other men were on the floor above changing the saws; that while there might be room for an inference that his head came in contact with a near-by unguarded Rosser saw, which was left in motion, there were no witnesses to the accident and no testimony to show in what manner he came in contact with the saw, whether in the line of his duty or performance of his work, or in some of the many ways for which the master would not be liable.

Appeal from a judgment of the superior court for King county, Tallman, J., entered October 4, 1907, upon granting a nonsuit at the close of plaintiff's case, in an action for the wrongful death of an employee in a mill. Affirmed.

*Roberts & Hulbert* and *O. M. Miller*, for appellants.

*Graves, Palmer & Murphy* and *Charles H. Winders*, for respondent.

DUNBAR, J.—This action is brought by the wife and surviving children of George H. Whitehouse, deceased, to recover damages from defendant for the alleged wrongful death of

[1]Reported in 97 Pac. 751.

deceased. The complaint contains two general averments as a basis of the action for damages: (1) The failure of the defendant to guard a certain saw, in violation of the factory act, and (2) the employment of an incompetent servant to operate said saw. When the case was called for trial, on motion of defendant, the plaintiffs were compelled to elect upon which cause of action they should proceed, and they elected to proceed upon the cause of action based upon a violation of the factory act.

Plaintiffs' intestate was employed as head sawyer in defendant's mill, and had been so employed for a long time prior to the accident. The carriage way and the log deck were, in a general way, similar to such instruments or appliances in the ordinary mill. Suspended from the beams over the carriage way, and to the south and west of the sawyer's position, is a frame which contains what is called a "Rosser" saw, a saw used for barking or slabbing the logs before they are sawed, in order to rid the logs of all sand or gravel. This frame is raised or lowered by means of ropes attached. The Rosser saw has coarse, hooked teeth, and clears the log for the band saw. The band saw is eight or ten feet north of the position occupied by the Rosser saw, when operating upon the log.

At the time of the accident, the sawyer, the deceased Whitehouse, had directed the suspension of the operation of the machine for the purpose of putting on a sharp band saw, but at such times it was customary to leave the Rosser saw in motion, and it was left in motion at this time. Accordingly all the men working about the saw and carriage, including the Rosser saw man, by the sawyer's instruction went to the floor above for the purpose of letting down the sharp saw after the dull saw had been removed, the sawyer, the deceased Whitehouse, remaining below to loosen the clamp that held the dull saw and to reclamp the sharp saw when it was let down by the men above.

After dropping the sharp saw down, the men above waited some ten minutes for some signal or direction from the sawyer below, when they received word that the sawyer was hurt. The sawyer was found, soon after the accident occurred, in an unconscious condition, and died in a short time without recovering consciousness. His skull was fractured, and the contention of the plaintiffs was that, in the performance of his duties, he had risen up and his head had come in contact with the jagged teeth of the Rosser saw, which was the cause of his death. No one saw the accident, but there was testimony to the effect that when he was found the Rosser saw was in motion and at a height which would permit it to strike a man in the top of the head, if he rose up under it. Portions of his hat, or of a hat similar to one which he wore, were also found scattered about the log deck, and there was medical testimony to the effect that the fractures of the skull could have been caused by coming in contact with the Rosser saw, or a saw of that character. At the conclusion of the plaintiffs' testimony, on motion of defendant's attorney, a nonsuit was granted, and the case dismissed. From a judgment of dismissal this appeal is taken.

It is not necessary to discuss the alleged error of the court in compelling appellants to elect under which cause of action they should proceed, or whether both allegations included one cause of action, for we are of the opinion that under the testimony the appellants could not recover in any case. For conceding, for the purpose of the case, that there was testimony upon which the jury might have been warranted in finding negligence on the part of the respondent, there is no testimony upon which a jury could have based a conclusion that such negligence was the proximate cause of the injury, not because there was no eyewitness to the accident, since it is undoubtedly the established law that the proximate cause may be shown by direct evidence or it may be adduced as an inference from other facts proven, but because no legitimate inference can be drawn that an accident happened in a certain

way by simply showing that it might have happened in that way, and without further showing that it could not reasonably have happened in any other way. Even if it be conceded that the decedent met his death by coming in contact with the Rosser saw—and it may be that there is room for such an inference under the testimony in the case—there is no testimony whatever tending to show in what manner he came in contact with the saw—whether it was in the line of his duty, whether it was necessary in the performance of his work to rise up under the saw, whether he pulled the saw down upon himself, whether he failed to take notice of an obvious peril, or whether the accident was caused by any one of the many conceivable ways which would not charge the master with liability. Without specially reviewing all the testimony in this case, we think it falls squarely within the rule announced in *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Reidhead v. Skagit County*, 33 Wash. 174, 73 Pac. 1118; *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; *Olmstead v. Hastings Shingle Mfg. Co.*, 48 Wash. 675, 94 Pac. 474; *Peterson v. Union Iron Works*, 48 Wash. 505, 93 Pac. 1077; *Hansen v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457; *Stone v. Crewdson*, 44 Wash. 691, 87 Pac. 945.

The judgment will therefore be affirmed.

HADLEY, C. J., RUDKIN, CROW, and FULLERTON, JJ., concur.

MOUNT and ROOT, JJ., took no part.