[No. 7830. Department Two. January 13, 1910.]

LEWIS J. KNAPP, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*[1]

CARRIERS—NEGLIGENCE—SETTING DOWN PASSENGERS — EVIDENCE—SUFFICIENCY. Negligence in putting an intoxicated passenger off at his station while the train was moving is not shown where it merely appears from his testimony that he became intoxicated on the train and was awakened at his station and some one pushed him off the train; there being nothing but speculation or conjecture to connect the trainmen with the affair, and they having denied putting him off or any knowledge of how he got off.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered May 12, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger alighting from a train. Reversed.

*Geo. T. Reid* and *Englehart & Rigg,* for appellant.

*H. J. Snively* and *William M. Thompson,* for respondent.

PARKER, J.—This is an action to recover damages for personal injuries, alleged to have resulted to plaintiff from the negligence of the railway company in putting plaintiff off its train, while he was in a state of intoxication and while the train was in motion.

By his complaint, plaintiff alleges, in substance, that on April 19, 1907, he became a passenger on defendant's train, at North Yakima, to go to the station of Mabton; that he became intoxicated upon the train to an extent that he was not able to know what he was doing, which the officers and employees in charge of the train knew or could have ascertained by casual and ordinary inspection; that he went to sleep prior to reaching Mabton, and was asleep and intoxicated and was not aware that he had reached that station upon the train's arriving there; that when the train

[1] Reported in 106 Pac. 190.

pulled out of that station, one or more of the employees or officers in charge of the train awakened him and took and accompanied him to the platform of the car, while the train was running, he still being intoxicated and not conscious of what he was doing, or the risk he was taking, or the fact that the train was moving, so carelessly and negligently put and assisted him off the train, and so carelessly and negligently permitted and advised him to alight therefrom in his intoxicated condition, that he was dashed violently to the ground, and thereby injured. The nature and extent of plaintiff's injuries need not be noticed, since no question arises thereon.

The railway company's answer is, in substance, a denial of the acts of negligence charged against it, with an allegation of plaintiff's own negligence as the cause of whatever injury he sustained; to which allegation plaintiff replied, denying the same. At the conclusion of the trial, before the court and a jury, the defendant moved the court to take the cause from the jury and render judgment in its favor upon the ground that the evidence was not sufficient to submit to the jury the question of its negligence, and that it affirmatively appeared therefrom that the injury to plaintiff was caused by his own negligence and without fault of defendant, which motion was denied, and exception was taken, when the cause was submitted to the jury and a verdict rendered against defendant. Thereafter defendant moved for judgment notwithstanding the verdict upon substantially the same grounds as for judgment at the close of the evidence, which was denied, when exception was taken, and judgment rendered accordingly, from which defendant has appealed.

The only question to be determined is, Was the evidence sufficient to sustain the verdict and judgment? We have carefully read the evidence, all of which is brought here by statement of facts for our review. Let us first notice re-

spondent's own version of his condition, and also how he got off the train.

He says:

"I had been drinking considerable that day. I drank considerable on the train. I remember leaving here (Yakima), and about the last I remember was pulling into Toppenish, . : . and then fell off to sleep. . . . I was drinking most all the way down there. . . . The first thing I remember, there was somebody punched me in the back and I fell on the ground, . . . and looked up and saw the train crew looking at me. . . . I don't know whether there was two or three there. . . . And also there was some people looking out of the window at me."

This, the evidence shows, happened as the train was leaving Mabton, where he was to get off. The evidence is silent as to how fast the train was going, but it evidently had not acquired much speed. A few days after the accident, he signed a written statement, in the presence of three witnesses, apparently freely made, in which he states the facts in substance the same as in his evidence above quoted, except he states therein, "I would not state that I was pushed off the train as I knew nothing until I was laying on the ground, after I went to sleep, but I have witnesses to prove I was pushed off the train." The testimony and written statement above quoted is the substance of plaintiff's whole story, and no version of it can be drawn from the record which is more favorable to his contentions.

The evidence shows that plaintiff was very much under the influence of liquor, but there is no evidence to the effect he was helpless or unable to walk and move about without assistance, save his own statement to the effect he was asleep, and has no memory of what occurred from the time the train left Toppenish until he fell on the ground at Mabton. There is no testimony of any witness who saw any one push or assist him off the train, though some of the witnesses saw him come off, or fall off. One witness said he came off "like he had a big force behind him," but admitted he did not

know whether any employee had touched respondent or not. This is the nearest any testimony went towards showing respondent was pushed off, assisted off, or urged to get off the train.

There was testimony to the effect that respondent, upon the arrival at Mabton depot, got off and put his blankets down, and then got back on the train again and entered into conversation with a man near the middle of the smoking car, in which respondent had been riding with some fifteen or twenty others in one party coming to Mabton to work on a new railroad grade. In any event, he was in the smoking car and it was from there he went off the train. The porter testified that he saw respondent start to go out of the car as the train was starting, that he told the brakeman, "and we both rushed back to see if he was going to get off, and he was off." The brakeman testified in substance the same. Both testified, neither pushed him off. They did not even see him get off or fall off, though they saw him immediately after, and no other employee was there. There was other testimony to the effect that he started and ran out of the smoking car, and also that he seemed able to take care of himself. The porter and brakeman appeared on the platform immediately after respondent got off or fell off, which accounts for their being seen there at that time by some of the witnesses. This is in substance all the evidence we have in the record showing how respondent got off the train. This makes it purely a matter of speculation and conjecture as to whether the brakeman, porter or any employee of the company, pushed, assisted, or even advised respondent to get off the train while in motion. In order to sustain this verdict we must presume the brakeman and porter were guilty of pushing respondent off the train in his drunken condition, from the mere fact they were present immediately following his falling off. Why not presume they hurriedly followed him out of the smoking car for the purpose of preventing his getting off, in view of the train being

in motion? Why not presume they were attempting to do the right and humane thing rather than to presume they did the inhuman act sought to be attributed to them? But we are not to decide cases upon presumptions outside the realm of the evidence. This is not a question of deciding between conflicting statements in the evidence, except possibly respondent's own conflicting statements to the effect that "there was somebody punched me in the back and I fell to the ground," and "I could not state that I was pushed off," but it is a question of a search in vain, in this record, for any evidence that the brakeman, porter, or any employee on the train had anything to do with respondent's getting off the train. We cannot find support for this verdict save within the field of speculation and conjecture. And as was said in *Gardner v. Porter*, 45 Wash. 158, 88 Pac. 121, "We have frequently held that such a field is not a proper one for the jury." *Peterson v. Union Iron Works*, 48 Wash. 505, 93 Pac. 1077.

We are of the opinion that the learned trial court erred in its disposition of the cause. The judgment is reversed with instructions to grant appellant's motion for judgment notwithstanding the verdict.

RUDKIN, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.