[No. 10450.   Department Two.   January 28, 1913.]

JOE PEARSON, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—SAFE PLACE—NEGLIGENCE—EVIDENCE—SUFFICIENCY. Evidence that an employee on a box car on a side track fell when "the roof felt like it went out," that something hit the car and what he was standing on "went out," and that an engine kicking cars might have hit it, and of another witness that something hit the train and jarred it, is not sufficient evidence to sustain a recovery on the theory that the box car was violently hit by an engine, there being no evidence that any engine was in the vicinity; since recovery cannot be based on speculation and conjecture (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for Pierce county, Card, J., entered January 30, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee of a railroad while repairing box cars. Reversed.

[1]Reported in 129 Pac. 573. .

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellant.

*Govnor Teats, Hugo Metzler, Leo Teats,* and *Ralph Teats,* for respondent.

MORRIS, J.—Respondent was injured while in the employ of appellant, and brought this action alleging that his injury was caused by the appellant causing a train "to collide violently" with a string of six box cars standing upon a switch, and upon one of which he was at the time engaged in covering the roof with tar paper. The appeal is taken from a judgment following verdict in his favor.

The only question suggested by the appeal is insufficiency of the evidence to justify the verdict. It follows that, if there was any substantial evidence upon which the verdict can rest, it must be sustained. With this rule in mind, we have read the transcript of the testimony, and must hold that appellant's claim of error is well taken. There is no evidence, as alleged in the complaint, that a train collided violently with the string of box cars upon the switch, causing respondent to be thrown from the car upon which he was working. At the time of the accident, and about 5:30 p. m., respondent was on the roof of the fourth car in the string, placing the tar paper upon the roof. These six cars were upon a switch near Winlock, and were used by a bridge gang as living quarters, one of them being a tool car, another being used as a kitchen and dining car. It was a wet day, and the tar paper was covered with mica dust, making it slippery. Respondent was standing in a stooping position about the center of the car, trying to shove the paper under a tin plate surrounding the smoke stack, when, as he says, "the roof felt like it went out and the next I knew they picked me up." His testimony then proceeds as follows:

"Q. What moved the cars? A. Something hit it. Q. What hit it? A. I didn't see. Q. What could hit it? A.

The engine when kicking cars. Q. Could anything else hit it? A. No sir, not to make it jar."

He then says he saw no engine, nor heard any; and in response to the question: "How do you know an engine struck the cars?" he replied: "I could feel when I was standing that it went out, what I was standing on;" that the car moved "like it struck;" could not say "how hard it hit." There is no evidence in this testimony that a train "collided violently," or at all, with these box cars. Respondent heard no train; saw no train. The only reference to any collision is "that an engine kicking cars could hit the string of box cars." This is not positive testimony of any degree that any engine did collide with these box cars. To say an engine could do it is no proof that an engine did do it. When stripped of its opinion and conjecture, respondent's evidence goes no farther than that something hit the cars hard enough to throw him to the ground. What it was is not disclosed. The respondent, nor any other witness in his behalf, testified to the presence of any engine near the scene of the accident, either before it happened or afterwards. It seems to us that, if the law does not require some evidence that an engine did do it, it would at least require some evidence that there was an engine working around there that could do it. But the evidence does not go that far. That respondent is only guessing at his engine theory is apparent from his answer to the question: "How do you know an engine struck the cars?" If there was any fact within his knowledge upon which to base his belief that it was an engine, it seems to us he would have given it in response to this question; but he answers it: "I could feel when I was standing that it went out, what I was standing on." This is nothing more than to say, because he fell off from the car upon which he was standing, or, using his own idiom, when what he was standing on went out from under him, he knew an engine had collided with the string of cars. We cannot see how one

fact proves the other, or under what rule of law a jury should be permitted to say it does.

A brother of respondent was painting in one of these box cars. He says: "Something hit the train and jarred it." He felt the shock, but it did not affect him and he paid no attention to it. It also appeared that respondent was using a crowbar, saw, hatchet, hammer, wood chisel, and knife, in his work, and that some of these tools, the knife at least, were found upon the ground. That proves nothing save that the knife or other tools fell off. True, any jar sufficient to throw respondent off might cause the tools to fall. It would be equally true that respondent, losing his footing because of the wet and slippery mica dust, might have pushed them off in his fall. One guess is as good as another; there was no proof of either.

When counsel for respondent, in seeking to establish his case, asked: "What could hit it?" and depended upon a reply that an engine switching cars could, he brought this case within the rule of: *Hansen v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457; *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Reidhead v. Skagit County*, 33 Wash. 174, 73 Pac. 1118; *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881, and other supporting cases, where it has been said that it is not sufficient, in seeking to establish causes of injury, to show that there were causes which might have produced it, without showing that it could not have been produced in any other manner. In fact, respondent's case is not as strong as the plaintiff's case in any of those cited, for the reason that, while showing that an engine backing cars against this string of box cars could have produced a jar sufficient to cause him to lose his footing and fall, he failed to show that there was an engine doing such work, or to show any engine in that vicinity that could have done it. The jury was, therefore, left to speculation and conjecture to find a proximate cause for this injury which, in the language of Dunbar, J., in the *Armstrong*

case, "must not be confused with legitimate testimony," admitting that "it is true that the weight of the testimony is entirely for the jury."

We can see no escape from the conclusion that this case is controlled by the rule of the cited cases, and that, for the reasons here and there given, the court should have granted appellant's motion for judgment. These conclusions are strengthened by the testimony introduced by appellant, which it was not sought to dispute, that no switching had been done at this point that afternoon, and that, at the time of the accident, the switching engine and crew were "tied up" on a spur track near Winlock, some distance from the scene of the accident.

The judgment is reversed, and remanded with instructions to dismiss.

MOUNT, ELLIS, and MAIN, JJ., concur.

FULLERTON, J. (dissenting)—The opinion of the majority proceeds upon the assumption that it was incumbent on the respondent not only to prove that something struck the car upon which he was working with sufficient force to throw him therefrom to the ground, but the particular something that struck the car. But such is not the rule. This burden was not upon the respondent. The appellant, as the respondent's employer, was obligated to furnish him with a reasonably safe place in which to work, and to keep the place reasonably safe as long as the work continued. The respondent, therefore, made a *prima facie* case when he showed a violation of this obligation—when he showed that, while he was working on the top of the car in the manner directed by the appellant, something struck it, caused by no fault of his own, sufficiently hard to throw him therefrom to the ground. The burden of accounting for the accident is on the appellant; it is obligated to show that the striking of the car was caused by some act for which it is not responsible, if it is to be relieved from liability therefor; this is the

necessary corollary of the rule which required it to keep the place of work furnished by it to the respondent reasonably safe. I think, therefore, that this court errs in holding that the judgment is not sustained by the evidence.