[No. 11615.   Department One.   April 29, 1914.]

DORA E. ATWOOD *et al., Respondents*, v. WASHINGTON WATER
POWER COMPANY, *Appellant.*[1]

TRIAL—EVIDENCE—PROVINCE OF COURT AND JURY. Where the minds
of reasonable men may differ, the legal sufficiency of the evidence is
for the jury.

CARRIERS—INJURY TO PASSENGERS—TAKING ON PASSENGERS—SUD-
DEN JERKS—NEGLIGENCE—QUESTION FOR JURY. Whether a street rail-
way company was guilty of negligence in starting a car with a sud-
den jerk before an entering passenger could obtain a seat, is a ques-
tion for the jury, where there was evidence by the plaintiff and her
two children, who had often ridden on street cars, that they had
never before experienced such a violent jerk, and that the plaintiff
fell to the floor, and that her little boy also fell back into the arms
of the conductor.

DAMAGES—PERSONAL INJURIES—RESULTING MISCARRIAGE—EVIDENCE
—SUFFICIENCY. The evidence warrants the submission of the case
to the jury, and the inference that plaintiff's miscarriage on Thurs-
day following her injury on Sunday, was caused or contributed to
by the accident, where plaintiff was thrown to the floor of a street
car by a sudden jerk in starting a car as she was entering, a physi-
cian testified that the miscarriage was due to the injury, and plain-
tiff testified that, immediately after the accident, she suffered pain
in the head and abdomen which continued the next day and became
worse Tuesday, until on Wednesday she had slight hemorrhages, and
vomiting and sinking spells, that she had four children aged from
seven to fifteen years, and lived and assisted in work upon a farm;
although she had had two other miscarriages years before, and some
of the experts attributed the result to other causes (CROW, C. J., and
CHADWICK, J., dissent).

CARRIERS—INJURIES TO PASSENGERS — RESULTING DAMAGES — MIS-
CARRIAGE. A carrier is liable for a miscarriage which was either
caused by or contributed to by an injury flowing from its negligence.

APPEAL—HARMLESS ERROR—INSTRUCTIONS. Error cannot be as-
signed on the refusal to give instructions covered by the general
charge.

Appeal from a judgment of the superior court for Spokane
county, Blake, J., entered June 10, 1913, upon the verdict of

[1]Reported in 140 Pac. 343.

a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger in a street car. Affirmed.

*Post, Avery & Higgins,* for appellant.

*Munter & Flood,* for respondents.

Gose, J.—This action was brought to recover damages for personal injuries sustained by the plaintiff wife, in one of the defendant's street cars, in consequence of its alleged negligence. From a verdict and judgment in favor of the plaintiffs, the defendant prosecutes an appeal. This is the second appeal. See *Atwood v. Washington Water Power Co.,* 71 Wash. 518, 128 Pac. 1065.

The testimony tends to prove the following facts: On Sunday afternoon, June 18, 1911, between five and six o'clock, the respondent wife, hereafter called the respondent, with two of her small children and her stepdaughter, became passengers on one of the appellant's street cars. Before entering the car, the respondent lifted or assisted her little daughter, five years of age, weighing thirty or thirty-five pounds, onto the first step of the car. She then entered the car, followed by her son, then about eight years of age, and a grown stepdaughter. When the respondent reached the platform of the car, she took her daughter by the hand, walked into the car, and had gotten almost to the first cross seat, when the car started, with "such an unusual jerk," that she was thrown back, her shoulder and the right side of her head striking the door. She testified that she had often ridden on street cars, and that she had "never [before] experienced such a violent shock, so quick and so sudden." The respondent's son, who was about nine years of age at the time of the trial, testified that the car started with a jerk as he was entering the door, and that he fell into the arms of the conductor. The stepdaughter testified, that the car started with quite a jerk; that she had ridden on street cars many times; that she had "never experienced that kind of a jerk before;" and that she was in the

vestibule, had hold of a rod, and was thrown toward the north when the car started. The appellant's testimony tended to show that no such accident happened.

The appellant contends that the facts stated do not establish its negligence. The real question is, Does the evidence sustain an inference of negligence, or, put in another way, did it justify the jury in finding that it was negligent? We think the jury was warranted in inferring negligence. *Behling v. Seattle Elec. Co.*, 50 Wash. 150, 96 Pac. 954. The rule adopted by this court, and indeed by most courts, is that where the minds of reasonable men may differ as to the legal sufficiency of the evidence, the jury, and not the court, must determine the issue. *Thoresen v. St. Paul & Tacoma Lumber Co.*, 73 Wash. 99, 131 Pac. 645, 132 Pac. 860.

In *Work v. Boston Elev. R. Co.*, 207 Mass. 447, 93 N. E. 693, cited by appellant, the court, after observing that jerks while running, and jerks in starting and stopping to take on and let off passengers, and lurches in going around curves, are among the usual incidents of travel in electric cars which passengers must anticipate, and that if a passenger is injured by such a jerk, jolt, or lurch there is no liability, said:

"On the other hand an electric car can be started and stopped, for example with a jerk so much more abrupt and so much greater than is usual that the motorman can be found to be guilty of negligence and the company liable. The difference between the two cases is one of degree. The difference being one of degree and one of degree only, it is of necessity a difficult matter in practice to draw the line between these two sets of cases in which opposite results are reached. No general rule can be laid down. Each case must be dealt with as it arises . . . The plaintiff to make out a case must go further than merely to characterize the jerk, jolt or lurch and must show (1) by direct evidence of what the motorman did that he was negligent in the way that he stopped or started the car (as in *Cutts v. Boston Elevated Railway*, 202 Mass. 450), or (2) by evidence of what took place as a physical fact, . . ."

It will be observed that this differentiation is covered by
the testimony in the case at bar. The testimony is that the
jerk was not only unusual, but the most unusual that wit-
nesses who were accustomed to riding on street cars had ever
experienced. In addition to this, the evidence discloses what
took place as a physical fact; that is, it shows the physical
result of the alleged negligence. The appellant also cites
*Wile v. Northern Pac. R. Co.*, 72 Wash. 82, 129 Pac. 889.
There the injury occurred on a train composed of thirty-
eight freight cars and a passenger car. The negligence
claimed was a bump from the front of the standing train.
In holding that no negligence was shown, we said that the
respondent did not attempt to show that the jolt or jar was
greater than is ordinarily incident to the operation of freight
trains with passenger accommodations attached. In *Boll-
inger v. Interurban Street R. Co.*, 98 N. Y. Supp. 641, cited
by the appellant, the court said:

"The only evidence as to the character of the start and
stopping was that of the plaintiff's wife, who repeatedly
used the words 'violent jerk,' and that of her sister who said
that the car started with a 'sudden jerk.' This evidence
conveys no definite impression to the mind as to the character
of the movement of the car, does not show that that move-
ment differed in any way from that usually attending the
starting and stopping of an electric car and is insufficient as
evidence of defendant's negligence."

It is, of course, true that negligence cannot be inferred
from the use of mere exclamatory words without some ac-
companying statement showing an unusual or extraordinary
condition or some unusual physical result.

The respondent suffered a miscarriage on Thursday fol-
lowing her injury on Sunday. The appellant argues that
the evidence does not warrant the inference that the injury
sustained on the car caused or contributed to the miscar-
riage. The argument is that the miscarriage may have been
caused by lifting the child onto the car step, or by weakness
following two previous miscarriages, the second of which

was followed by a treatment known as curettment of the womb; and that there is no definite evidence pointing to the fact, or the inference, that the sudden and unusual starting of the car was the proximate cause of the miscarriage.

Upon this subject, the respondent's testimony discloses the following facts: The respondent was about thirty-six years of age at the time of the accident, and had four living children. She had had a miscarriage about fourteen years before the accident, and a second miscarriage three or four years before that time. No apparent cause was shown for the second miscarriage. The respondent said that, immediately after being thrown against the door, she felt "quite dizzy," "quite dazed and quite excited;" that her head began aching before she alighted from the car; that, after leaving the car she had slight pains through the abdomen; that, in a short time, she began to feel "sick and faint;" that, after she left the car, she went to consult Dr. Rohrer about her little boy; that she returned to the car and reached the end of the car line at Fort Wright about eight o'clock; that she then got into a buggy with her husband and rode home, a distance of about two and a half miles, arriving about 8:30 o'clock, after which she ate lunch. She further said that, on the next morning, she got up as usual, but that she had headaches and that her stomach was "greatly upset;" that she had pains through the abdomen; that, on Tuesday, the next day, she felt much worse, and had a great deal of headache, and that evening she began to have "slight hemorrhages," and was taken with an "an awful vomiting spell;" that, about nine o'clock Wednesday morning, she began to have sinking spells; that on Wednesday the doctor came, and on Thursday, the miscarriage took place, and that she was about three months pregnant.

Dr. Rohrer, her physician, testified that, when she came to his office Sunday afternoon, she was pale and nervous. In answer to a hypothetical question which fairly epitomized the evidence, he expressed the opinion that the injury she

sustained on the car produced the miscarriage. He also said that weakness incident to the two former miscarriages or the lifting of the child might have caused it. Dr. Kalb testified that, in determining the cause of the miscarriage, he would consider all things in any way connected with the subject—the accident on the car, the debilitated condition of the woman—and that the debilitated condition would be the producing cause, while the accident on the car may have been the exciting cause; that the usual and most general exciting causes of miscarriage are hard work, washing, etc., and that grief or fright might cause it. The respondent further testified, that she had four children aged fifteen to seven years; that she lived in the country; that, before the injury, she did the ordinary work of a housewife and assisted her husband in preparing vegetables for the market; that she often helped milk the cows; that she could work all the time; that she was "well," and that her health was "good" before the injury, and that she had many times before lifted her little daughter into the car. Dr. Frances Rose testified on behalf of the appellant, that she treated the respondent beginning in the spring of 1907, and continuing until the spring of 1908; that at that time she had heart and kidney trouble, which was in her opinion incurable. She and other physicians expressed the opinion that the miscarriage was not caused by the injury sustained upon the car.

Upon the facts stated, the court was warranted in submitting the case to the jury. The question is not what might have caused the accident. The law deals with probabilities, not possibilities. In *Graaf v. Vulcan Iron Works*, 59 Wash. 325, 109 Pac. 1016, quoting from *Griffin v. Boston & A. R. Co.*, 148 Mass. 143, 19 N. E. 166, 12 Am. St. 526, 1 L.. R. A. 698, we said:

"All that the plaintiff upon this branch of his case was required to do was to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause."

In cases of this character, a party seeking legal redress must usually rely upon presumptions and inferences. It is obvious that it could not be mathematically demonstrated that a given injury actually caused a miscarriage in a woman who was in perfectly sound health. The probabilities of the case must be submitted to, and weighed by, the trier of fact, whether that trier be a court or a jury. The testimony shows a sequence of events, physical symptoms beginning at once, growing rapidly in intensity, and culminating in a short time in a miscarriage. It warrants the inference that the injury either caused or contributed to the miscarriage. In either event, the appellant is liable for any injury flowing from its negligence. *Potter v. Aetna Life Ins. Co.*, 71 Wash. 374, 128 Pac. 647; *Jensen v. Shaw Show Case Co.*, 76 Wash. 419, 136 Pac. 698; *Davies v. Rose-Marshall Coal Co.*, 74 Wash. 560, 129 Pac. 98.

The appellant cites and relies upon the following cases from this court: *Hansen v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457; *Stone v. Crewdson*, 44 Wash. 691, 87 Pac. 945, 39 L. R. A. (N. S.) 180; *Knapp v. Northern Pac. R. Co.*, 56 Wash. 662, 106 Pac. 190; *Gardner v. Porter*, 45 Wash. 158, 88 Pac. 121; *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Reidhead v. Skagit County*, 33 Wash. 174, 73 Pac. 1118; *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; *Peterson v. Union Iron Works*, 48 Wash. 505, 93 Pac. 1077; *Olmstead v. Hastings Shingle Mfg. Co.*, 48 Wash. 657, 94 Pac. 474; *Whitehouse v. Bryant Lumber & Shingle Mill Co.*, 50 Wash. 563, 97 Pac. 751; *Weckter v. Great Northern R. Co.*, 54 Wash. 203, 102 Pac. 1053; *Lewinn v. Murphy*, 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912 D. 433. In none of these cases was the cause of the injury or death which was the subject of the litigation shown. A number of reasons for the injury or death were suggested, some of which would, and others would not, have imposed a liability. The cause of the injury or death in each case was as reasonably trace-

able to the one cause as to the other.   In other words, they are guess cases.

The appellant assigns error in the refusal of the court to give one of its requested instructions.   This claim of error, however, is not argued in the briefs.   We deem it sufficient to say that the law of the case is covered by the court's instructions.   The instructions are commendably brief, lucid, and to the point, and they warned the jury that negligence is never presumed but must be established by a preponderance of the evidence, and further that the burden was upon the respondent to prove by a preponderance of the testimony that the injury received in the car was the proximate cause of the miscarriage.

The judgment is affirmed.

ELLIS and MAIN, JJ., concur.

CROW, C. J. (dissenting)—I dissent for the reason that the finding that respondent's injury was caused by the alleged negligence of the appellant must be predicated on conjecture and speculation only.

CHADWICK, J., concurs with CROW, C. J.