[No. 13503. Department Two. January 26, 1917.]

N. E. TOLER, *Respondent*, v. NORTHERN PACIFIC RAILWAY
COMPANY, *Appellant.*[1]

APPEAL—REVIEW—PRESUMPTION—EXCLUSION OF EVIDENCE. Where
an attempt to identify an exhibit failed and, upon objection, it was
excluded and not given to the jury as evidence, it will be presumed
that the jury did not consider it for any purpose.

MASTER AND SERVANT—APPLIANCES—NEGLIGENCE—NECESSITY—RES
IPSA LOQUITUR—BURDEN OF PROOF. As between master and servant,
proof of the breaking of the drawbar pin on a locomotive coupling
without any known cause does not impute a defective condition due
to the negligence of the master, upon the principle of *res ipsa
loquitur*, but the burden is upon the servant to prove the master's
negligence unless the circumstances were so unusual or so under
the control of the company that the accident could not well have
happened except through negligence on the part of the company.

SAME—APPLIANCES—DEFECTS — RES IPSA LOQUITUR — EVIDENCE—
SUFFICIENCY. In such a case the principle of *res ipsa loquitur* does
not apply, and the evidence is insufficient to sustain a recovery in
favor of a fireman on a switch engine who was tripped and fell
when the drawbar pin coupling the tender to the engine jumped up
through the floor of the tender, where it appears that such pins must
have some play and ordinarily jump up and fall back into place,
that the pin in question had worked properly up to one-half hour
before the accident when it had twice jumped up and had been driven
back with force, indicating a defective condition in the pin or socket,
that no one had had previous notice of the defect and there was no
want of proper inspection; since there was no proof that the con-
dition could have been discovered by inspection, and it may have
simply jumped up at the instant of the accident in the ordinary way
without any negligence attributable to the company.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Sno-
homish county, Alston, J., entered January 27, 1916, upon
the verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by a locomotive fire-
man. Reversed.

[1]Reported in 162 Pac. 538.

*C. H. Winders,* for appellant.

*Govnor Teats, Leo Teats,* and *Ralph Teats,* for respondent.

HOLCOMB, J.—The evidence in support of respondent's case, brought under the Federal employers' liability act, was challenged, both on the close of his case and on the whole case and after verdict and judgment, and is here assailed as wholly failing to establish any legal negligence on the part of appellant to sustain the verdict and judgment, upon which grounds the principal errors are assigned.

Respondent alleged and claimed that, while in the employ of appellant as a locomotive fireman on a yard or switch engine at Everett, he was injured while engaged in interstate commerce. He contended that the drawbar pin beneath the engine and the tender was so out of repair that it worked up through the floor of the tender, making it dangerous for the fireman while stoking the boiler or doing other work required of the fireman, in that the fireman was liable to trip over the same while in the performance of his duties; all of which the defendant knew, or by the exercise of reasonable care on its part should have known, before directing and ordering the plaintiff to fire the same and before ordering and directing the plaintiff to run the same out over different tracks in its terminals, and the plantiff did not know, at the time of taking the engine or at all until about the time of the accident and injury to him, of the defective condition of the pin. The alleged injury occurred on February 7, 1915. Respondent alleged that, on the day previous, the pin holding the drawbar to the tender of the engine was out of repair so that it worked up, and that, on that day, he reported that fact to the engineer, but the engineer negligently failed to report it. There was no evidence, however, tending to support this last allegation of notice to the engineer and failure to report, and the jury were correctly instructed to disregard the same.

Respondent asserted that, at about the hour of three o'clock p. m., the drawbar pin, being defective and out of repair as

before stated, worked up through the floor of the tender a distance of about three inches; that thereupon he drove the pin down into place with his pick, and again in a few minutes the pin worked up through the floor and he drove it down hard; that, at that time, it required very hard blows from the pick to drive it into place, and he thought and believed that it would not work up again, and proceeded with his work on the engine; that, at about the hour of 3:30 p. m., the engine running in the course of the work, while he was in a position with his back toward the pin, shaking the grates on the engine with a wrench and being in a position where he could not see and watch the pin, and without any knowledge on his part, the pin suddenly worked up through the floor again, by reason of its defective condition, and he tripped over the same, throwing him with great force against the side of the tender and maiming and injuring him for life, as was more fully set out in detail.

Under these allegations and proofs, there was no evidence on the part of either the respondent or the appellant that either of them had any notice prior to the afternoon in question that the pin was defective and out of repair.

The following facts appeared, or might reasonably be inferred, from the evidence, in the light of which the questions as to liability must be determined: The particular engine was No. 924 of the appellant, and it was shown that respondent had not worked upon this engine during the previous thirty days. There was evidence that he went to work on this engine in the morning, and during the forenoon of the day of the accident several trips were made in hauling and switching cars, and in every trip the engine and cars were handled with care, nothing being done that would produce a defective drawbar pin. There was also evidence that the drawbar pin, when in a reasonably good condition, might jump out of its socket a few inches, but would of its own weight immediately drop down and remain in place; that when a drawbar pin jumps up and stays above the shoveling

plate, out of position, there is something defective in the drawbar pin or appliance, and especially so when it requires severe hammering to drive it down in place. There was also evidence that, on the following day, appellant removed the pin. The evidence of the appellant's engineer who assisted in removing it, and of another fireman, was that the pin was not bent, but that it was bright on one side, and that it was exceedingly difficult to remove the pin.

There was a question of the competency and effect upon the jury of certain evidence called plaintiff's identification B, which was a drawbar pin brought into court by respondent and which he attempted to identify by description and comparison with the pin which caused the alleged trouble. This pin was obtained from the roundhouse of appellant about three months before the trial. Respondent could not identify it as the pin in question, and only made attempts to identify it by comparison as looking like the pin which caused the trouble after it had been battered by hammering upon the head by the respondent. Upon objection by appellant, the evidence was rejected. This we think was proper, and we must presume that the jury did not consider it as evidence for any purpose, having been rejected by the court and not having been submitted to them as real evidence. There was, consequently, no error to the prejudice of appellant. The pin in question was, therefore, not in evidence. There was no testimony that the identical pin had in fact become bent, worn, or otherwise defective, unless such inference should be drawn from the fact that, while the engine was running, it jumped up and protruded three, four, or five inches, twice to respondent's knowledge, and had to be driven down each time, the last time with great force; and the further fact that next day, after respondent claimed that it had caused the injury, appellant caused it to be removed. The pin is twenty to twenty-two inches long and weighs thirty or forty pounds.

The engine and tender are connected by a drawbar about three and one-half feet long which fits into a large casting in the tender. These castings are about twenty inches thick, with holes through the center in which the draw pins are placed, passing also through a hole in the end of the draw-bar, in this way attaching the engine and tender together. The pin which fits in the engine casting is called the engine pin. The pin which fits into the casting of the tender is called the tender pin. The pin which is alleged to have caused this trouble was the tender pin. The heads of the pins are beneath the shoveling plate, a sheet of iron extending across the front opening and platform of the tender upon which the coal from the tender is brought down to be shoveled into the fire box. There are holes in the plate which permit the heads of the pins to drop down through to the casting. The pins are made of such dimensions as to drop down through the holes in the casting. If the head of the pin projects above the surface of the shoveling plate it interferes with the shoveling of coal and must be driven down into its place. It is intended that there shall be a slight play in the working of the pin in the hole of the casting so as not to cramp the engine and tender when going around curves or over rough track having high and low joints. The pins will become bent by slamming or throwing a train of cars violently back and forth. In going around curves or over rough track and uneven joints, the pins will work up and often do; but there was testimony that, if the pin was in perfect condition after having worked up, it would drop back, but that if the pin was defective or the hole in which it rests was defective, it might stay up or not drop down readily; that, if after having worked up, the pin did not drop back readily, that would indicate that either the pin or the hole in the bar was defective; that the defect might be either a shoulder becoming worn at the top or a pin being bent.

The engineer and the fireman (respondent) were both experienced men. On the day in question, they worked in the

forenoon over several miles of yards between the roundhouse in Everett and the stations of Lowell, Ebey Junction, Canyon Mill, and other places. During all that time they handled the cars with care, not slamming them or throwing them violently back and forth. There was no evidence on the part of respondent of any failure on the part of appellant to properly inspect the engine and its appliances, and there was uncontradicted evidence on the part of appellant to the effect that a thorough inspection of the entire engine and appliances was made every three months, and oftener if required, that the engineer was required to make reports of any defects upon written blanks furnished for that purpose, and that the rules of the interstate commerce commission also required such reports. If there existed any defect in any appliance handled by the fireman it was his duty to report it at the first opportunity to the engineer, who reported it. The testimony of the engineer was uncontradicted to the effect that he had no notice of the defective working of the pin in question on the day in question or for several days prior thereto; that he made no report of any such defective condition; that the first he knew of the alleged defect of the pin was the next day after the accident; that, upon such information, the pin was removed and another inserted.

Upon this presentation of the case, as to the question of negligence, appellant contends that the facts shown are merely these: That an experienced engineer and fireman took out a switch engine, worked with that engine over various tracks, handled with care various kinds of cars, and loaded and unloaded from eight o'clock in the morning until twelve at noon; that, after two o'clock, a train of cars was segregated on various tracks with no suggestion of trouble; that it is necessary in connecting a switch engine and tender that there shall be some play through the opening in the pocket where the drawbar fits into the casting on the tender; that it is necessary that a heavy pin go through the hole in the bottom of the tender; that this pin must have some play, and

that in the ordinary operation of either a switch or a road engine, or more particularly a switch engine, by reason of this play, the pin will work and wear a little so that it may jump up; that it will ordinarily fall down, but that at times it becomes stuck and has to be driven down; that such condition arises in the ordinary operation and cannot be prevented with the utmost care in operation, and that, on the day the respondent claimed he was hurt, the condition ordinarily incident to the operation of the engine arose in the afternoon after certain cars had been switched; that there is no evidence whatever that the appellant had failed to inspect, or had any knowledge or notice, or should have known, that this pin was not in proper condition on the morning of the accident, or at any time up to the time that the accident happened; that the only inference to be drawn therefrom is that the pin was not in defective condition up to that time; that the legal inference to be drawn, therefore, is that the appellant failed in nothing in its duty toward respondent, its employee, and that respondent failed to establish any liability against appellant.

Respondent contends that, under these circumstances, the rule of *res ipsa loquitur* applies, and that the jury were warranted in finding, as they must have found, that the pin was bent before respondent went to work on the engine on the day in question, and that, through the defective condition of the pin, he was injured; citing *La Bee v. Sultan Logging Co.*, 47 Wash. 57, 91 Pac. 560, 20 L. R. A. (N. S.) 405.

The disposition of this case upon that rule is a very troublesome question and is not so easy as respondent asserts. It is true that the rule of law is that the employer is under the duty to exercise ordinary care to supply machinery and appliances reasonably safe and suitable for the use of the employee, and in case of his failure so to do, unless the employee has waived his right after due notice of defective appliances and machinery, or has, upon due knowledge, assumed the risk, the employer is, of course, liable for any such

dereliction in duty; and if, as in the *La Bee* case, *supra*, an appliance had been furnished for use by the workman for a particular purpose and in a particular way, and the workman proceeded to use it for the contemplated purpose and in a proper manner without any want of care, and that appliance unexpectedly and without any known cause gave way or broke, it would be imputable to a defective condition, and upon proof of such accident and of such facts, it is a case of *res ipsa loquitur*, a *prima facie* case is established, and the burden is upon the employer to explain away, if possible, his presumed negligence.

Had the fireman been a passenger, in the case of an unexpected accident and injury, he would have had the benefit of a presumption of negligence which it would have been the duty of the company to rebut; but with an employee there is no such presumption, and he must, except under certain circumstances recognized in this state as exceptions, prove affirmatively the fact of negligence, and that it is negligence of such a kind as violates the duty of an employer to an employee. *Erie & W. V. R. Co. v. Smith*, 125 Pa. St. 259, 17 Atl. 443, 11 Am. St. 895; *Mensch v. Pennsylvania R. Co.*, 150 Pa. St. 598, 25 Atl. 31, 17 L. R. A. 450.

The employer is not an insurer of the safety of the employee. In the case of an employee against his employer for damages for personal injuries for failing in the performance of duty, the mere fact of the injury raises no such presumption of negligence on the part of the employer as in the case of a passenger against a common carrier, and the burden of proving negligence rests upon the plaintiff. *Lewinn v. Murphy*, 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912D 433.

"The true rule would seem to be that when the injury and circumstances attending it are so unusual and of such a nature that it could not well have happened without the company being negligent, or when it is caused by something connected with the equipment or operation of the road, over which the company has entire control, . . . a presumption of neg-

ligence on the part of the company usually arises from proof of such facts." 4 Elliott, Railroads, § 1644.

See, also, *Allen v. Northern Pac. R. Co.*, 35 Wash. 221, 77 Pac. 204, 66 L. R. A. 804; *Firebaugh v. Seattle Electric Co.*, 40 Wash. 658, 82 Pac. 995, 111 Am. St. 990, 2 L. R. A. (N. S.) 836.

"The phrase *res ipsa loquitur*, as applied to negligence cases, is used to give expression to the idea that, when an accident is shown to be of such a character as, in the light of ordinary experience, is inexplicable except as the result of negligence, then negligence will be presumed." *De Yoe v. Seattle Electric Co.*, 53 Wash. 588, 102 Pac. 446, 104 Pac. 647, 1133.

In the *Lewinn v. Murphy* case, *supra*, we said:

"Following the liberal rule adopted by the court in personal injury cases, we did, in the case of *LaBee v. Sultan Logging Co.*, 47 Wash. 57, . . . apply this doctrine to the relation of master and servant, and in doing so, concededly went beyond the weight of authority; . . . We gave as our reasoning in that case that the facts shown eliminated blame on the part of the injured servant or his fellow servants, when the injury was caused by the breaking of a cable which had been given the servant by the master for a particular use, and which at the time of the breaking was being used in the manner directed by the master; adopting the theory that 'the instrumentalities intended for a particular purpose and suitable and proper for that purpose, do not break when put to the use for which they are designed, when used in a proper manner.'"

See, also, *Waight v. Lake Washington Mill Co.*, 48 Wash. 402, 93 Pac. 1069; *Johnson v. Columbia & Puget Sound R. Co.*, 74 Wash. 417, 133 Pac. 604. Thus this court has greatly extended and liberalized the prevailing rules as to negligence as between employer and employee in the interests of justice and humanity.

In the case at bar, had the pin unexpectedly broken without any known or apparent cause and thus caused an injury to the respondent, even though no defect had been discovered

theretofore and though adequate and constant inspection had been made theretofore, and no negligence on the part of the employee had occurred at the time of the unexpected breaking of the pin or previously, such occurrence would have raised an inference of defective condition of the pin and would doubtless have invoked the application of the rule of *res ipsa loquitur*, as in the *La Bee* case. In this case as it stands, we must acknowledge that no omission of inspection is shown; nor did "appellant know, or should it have known," as respondent alleged, of the defect, if any existed; it was unknown, at least until a very short time prior to the occurrence, to either the respondent or the appellant through the engineer. If the defect had existed before for some appreciable length of time and was one which ought to have been discovered by an inspection before the accident happened, this appellant would doubtless be liable. Under the facts as presented here, the pin may have simply jumped up at the very instant that respondent stumbled backwards over it, in the usual and ordinary way that the testimony shows such pins ordinarily jumped up in the handling of an engine, without any negligence being attributable to the master or its servants, and of which contingency respondent, as an experienced employee, was fully aware. There could be nothing more than a guess or conjecture that the condition of the pin or the drawbar was defective at the time the accident happened.

Under these facts, therefore, we are constrained to hold that there is no room for the application in this case of the principle of *res ipsa loquitur*, and that respondent failed to establish a *prima facie* case of negligence by any evidence whatever against appellant.

Such being the case, the judgment must be reversed with directions that the respondent take nothing by his action.

MOUNT, MORRIS, and PARKER, JJ., concur.

FULLERTON, J., dissents.