HALBERT B. WARREN, Respondent, *v.* ROSE WERTHER, Doing Business under the Firm Name and Style of "PRODUCE EXCHANGE BATHS," and Also Carrying on Business under the Name and Style of "ESTATE OF JEAN A. E. WERTHER," Appellant.

First Department, March 15, 1918.

**Negligence — liability of proprietor of Turkish bath establishment for injury to patron — evidence.**

In an action against the proprietor of a Turkish bath establishment for personal injuries alleged to have been sustained while the plaintiff was in the hot room, evidence *held* insufficient to establish negligence of the defendant in failing to supply reasonable protection and attendance or in insufficiently covering the floor of the hot room, or in failing to supply plaintiff with medical attendance after the accident or in maintaining an excessive temperature.

Where a person, apparently in good health and condition, presents himself for the use of the accommodations provided in a public bath, the proprietor thereof is justified in believing that the patron is in fit condition to use the bath, knows what he is about, and can safely be permitted to make use of the bathing privileges, as ordinarily conducted.

APPEAL by the defendant, Rose Werther, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of June, 1917, upon the verdict of a jury for $6,147.90, and also from an order entered in said clerk's office on the 27th day of June, 1917, denying defendant's motion for a new trial made upon the minutes.

*William A. Jones, Jr.,* for the appellant.

*Wendell P. Barker* of counsel [*Albert J. Hiers* and *Ira L. Anderson* with him on the brief], for the respondent.

DOWLING, J.:

The defendant conducts a bathing establishment in the city of New York, wherein what are commonly known as "Turkish" baths are provided for the public for a compensation. On April 13, 1916, the plaintiff entered the defendant's premises, prepared himself for the bath and was directed to the hot room which he entered, and according to his

First Department, March, 1918. [Vol. 182.

testimony conversed for a few moments with some other bathers who were there, then sat down in a chair and became unconscious, recalling nothing beyond that. He estimates the time during which he sat in the hot room before he became unconscious as from ten to fifteen minutes. The hot room was furnished with chairs along its side, with a strip of cloth or rug in front thereof, the balance of the floor being of white marble. When plaintiff was removed to the outer room by one of the attendants he was burned on the forehead, eyelids, right arm, body and limbs. The only other witness called as to the actual occurrence in the hot room testified that he also was taking a Turkish bath and observed plaintiff talking with some other person in the hot room, through which this witness repassed on his way out to the cooler of the two hot rooms, where he sat for a considerable time reading his paper, when he heard plaintiff moaning, evidently in distress, and not knowing what the trouble was, arose and pressed an electric button which called an attendant who went into the inner room and removed the plaintiff therefrom. It appears that there were two hot rooms in this bath whereof plaintiff had entered the warmer. He was accustomed to using the Turkish baths and knew that the temperature in the different rooms varied, and he went knowingly from the larger room with its more moderate temperature into the smaller room with the higher temperature. Plaintiff claimed that he was in good health previous to the occurrence in question and had never been overcome by the heat theretofore nor had he ever had any ill effects from the Turkish baths that he had taken during a course of years and on a great many occasions. On redirect examination he admitted that he knew that he had some trouble with his heart through having applied for life insurance and been placed in the sub-normal class because of heart trouble, but he had no knowledge that his condition was serious or that he had an excessive blood pressure. He testified also that he could not say that the temperature in the room in question was higher than he had been accustomed to; if it was, the difference was not noticeable. It was his practice to remain in the hot room in Turkish baths for an average of at least half an hour. Medical testimony was given on plaintiff's behalf as to the severity of the burns and

as to his condition after he was removed from the bath. One of the expert witnesses testified that burns of the kind which the plaintiff was suffering from would result either from a protracted application of a heat of 150 degrees or from the application of a greater degree of heat for a shorter period of time. Plaintiff's attending physician admitted that the plaintiff's blood pressure was beyond the normal and excessive.

For the defendant, medical testimony was produced to establish that the plaintiff was suffering from organic heart disease; that his blood pressure was excessive; and that the partial paralysis which plaintiff claimed to exist in his left arm as a consequence of the accident was in fact due to the breaking of a small blood vessel in the brain. It was also testified that a person with an excessive blood pressure and a heart lesion, spending ten to fifteen minutes in the hot room of a Turkish bath, was risking his life in so doing.

The case was submitted to the jury on two theories of negligence: *First*, that plaintiff was entitled to reasonable protection and reasonably sufficient attendance and attention from the defendant, such as a person of ordinary prudence engaged in such a business would supply for a patron; *second*, that the floor of the hot room was not sufficiently covered and that it was negligent not to have the whole floor thereof protected by carpets or rugs. There is no testimony in this record which would justify a recovery upon either theory. Plaintiff was an experienced bather. He asked for no instructions as to what he should do when he entered the defendant's baths and gave no exterior indication of illness, nor of a physical condition which might render his use of the baths dangerous. He himself did not imagine that he was taking any risk in following out his usual course of making use of the facilities of the bath nor did he believe that his physical condition was such as to render its use dangerous. It is difficult to see on what theory the defendant could be bound to anticipate a condition which plaintiff himself did not believe possible and to surmise that he needed special attention or protection. The testimony as to how long he remained in the hot room is of the vaguest and most indefinite kind, and there is no proof that the bather in the next room who called

the attendant did not hear the plaintiff's moans as soon as he was affected in the inner room, whether by the heat or by his physical ailments. There is no suggestion of proof that the plaintiff's injuries could have been prevented by the presence of an attendant within easier reach or call than he appears to have been, for he responded at once to the bell when it was rung by the witness Mollison. There was no proof made by the plaintiff as to the construction of the bath so as to show that there was negligence in not permitting more speedy access to the hot rooms by attendants, nor that there were not sufficient attendants on duty, nor that there was anything in the conduct of the rooms which was different from what was ordinarily deemed prudent and careful in such establishments. Plaintiff expressly abandoned any effort to prove that the temperature in the inner room was abnormal, and plaintiff's own testimony shows that such was not the case but that the heat was only of the intensity usual in such rooms. Without proof of the length of time during which plaintiff was unconscious and without proof of any negligence in the operation of the defendant's business it would not be possible to hold the defendant liable upon this record, except upon the theory that the defendant would be expected to have attendants continually on service in said hot rooms, which of course would be unreasonable to expect, and difficult, if not impossible, to execute. Where a person apparently in good health and condition presents himself for the use of the accommodations provided in a public bath, I believe the proprietor thereof is justified in believing that the patron is in fit condition to use the bath, knows what he is about, and can safely be permitted to make use of the bathing privileges as ordinarily conducted. As to the second point, there is no proof that plaintiff's injuries were in any way due to a failure to cover the entire floor of the hot room, nor is there any proof as to the part of the floor or room whereupon plaintiff sustained his injuries, nor is it shown that such a room is either customarily or should properly be entirely covered.

In addition to the two grounds of negligence assigned upon the trial plaintiff now claims that the defendant was liable for its failure to supply plaintiff with medical attendance

after the accident. But there is no proof in the case that the injuries were in any way aggravated by the tardiness of the medical attendance nor in fact does the record justify even an inference that the plaintiff was not furnished with medical attendance as soon after he was removed from the hot room as was possible. Plaintiff also now assigns as a ground for upholding the recovery that the temperature in the inner room was excessive, but of that there is not even a shred of testimony, and what proof there is coming from the plaintiff himself shows that the temperature in the room in which he sat was no greater than what he had been accustomed to in similar rooms elsewhere. Upon the whole case I am unable to find any theory upon which defendant can be held liable for negligence.

The judgment and order appealed from should, therefore, be reversed, with costs, and the complaint herein dismissed, with costs. The findings that the defendant was guilty of negligence and that the plaintiff was free from contributory negligence are reversed.

CLARKE, P. J., LAUGHLIN, PAGE and SHEARN, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.