[No. 21599. Department One. May 1, 1929.]

THOMAS BROTHERS, *Respondent*, v. GRAYS HARBOR
BUILDING COMPANY, *Appellant*.[1]

*Roy E. Bigham* and *Neal & Bonneville,* for appellant.

*James W. Selden* and *Emil N. Stenberg,* for respondent.

BEALS, J.—The plaintiff, in his amended complaint, alleged that defendant is a corporation, engaged, among other things, in the operation of a bath house in the city of Tacoma, and that, during the month of June, 1927, plaintiff, desiring a "Russian bath," went to the establishment operated by defendant and requested the service which he wished, the same being in the nature of a hot steam bath; that an employee of defendant took plaintiff in charge and directed his movements; that plaintiff was placed by defendant's agent in a bath room equipped with hot pipes and radiators, and that the bath room was unsafe in that

[1]Reported in 276 Pac. 896.

the same was *poorly* lighted and the *hot pipes* and radiators were not guarded; that, after plaintiff was placed in the bath room, defendant was negligent in that the temperature of the air, steam and vapor was allowed to rise to such a degree as to render plaintiff unconscious, and that, while in an unconscious state, plaintiff was severely scalded and burned to his damage in a considerable sum. To this complaint, after a demurrer had been overruled, defendant filed its amended answer, denying the material allegations thereof, pleading contributory negligence on the part of plaintiff; and, as a second affirmative defense, that plaintiff was experienced in the taking of baths of the same general nature as that furnished him by defendant, and that any danger in connection therewith was open and apparent and plaintiff assumed the risk thereof, if any. To these affirmative defenses, plaintiff replied with denials. The trial of the action to a jury resulted in a verdict in plaintiff's favor in the sum of $2,482.50. Defendant moved for judgment in its favor notwithstanding the verdict, which motion was, by the court, overruled. From the entry of judgment on the verdict of the jury, defendant appeals.

Respondent, who was seventy-two years old at the time of the receipt of the injuries of which he complains, was thoroughly familiar with the operation of Turkish and Russian baths, testifying that he had been in the habit of taking such baths for the past forty years, sometimes as often as twice a month for a year at a stretch. On the evening of June 4, 1927, he stated to appellant's employee who was in charge of the bath house that he desired a bath, and paid the fee demanded. Respondent was then turned over to a male attendant, who conducted him to the dressing room, where he disrobed. He was next taken to a room where a foot bath was provided for him. After about

twenty minutes, the appellant put respondent under a shower, and turned on the water. The attendant then left respondent, and respondent testified that, shortly after being left alone, he became unconscious, and that he remembered nothing more until he came to, about a quarter after eleven of the same evening, finding himself in a bedroom upstairs, under the care of a physician, and suffering from severe burns about his head, shoulders and legs.

The exact manner in which respondent received the burns from which he suffered is not disclosed by the evidence. Whether they were the result of hot water or live steam being projected against his body while he was unconscious, or whether they were produced by his falling against hot pipes or a radiator, does not appear. Neither is there any testimony as to the length of time respondent remained in an unconscious condition. The burns suffered by respondent were very severe, and the verdict, if supported by the evidence, is not excessive.

Appellant contends that the doctrine of *res ipsa loquitur* does not apply to such a case as this, and that there is no other doctrine or rule of law under which the verdict of the jury can be justified. No testimony was introduced from which the jury could have found that the bathing appliances in the room in which respondent was injured were inherently defective, or that any accident, such as the bursting of a pipe or valve, had occurred. In 20 R. C. L. § 156, p. 187, is found the following concerning the doctrine of *res ipsa loquitur:*

"More precisely the doctrine of *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not

happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant 'tending to show that the injury was not due to his want of care.''

In the case at bar, of course the bath house and all rooms and apparatus therein were under the control and management of appellant, and appellant owed to respondent the highest degree of care, but we are left in doubt as to what "thing" produced the injury. Ordinarily, if water coming from the shower becomes too hot, the bathers step out from under the apparatus; hot pipes and radiators are necessary in a bathing establishment, and are entirely harmless to patrons using ordinary care and in possession of their faculties.

In his amended complaint, respondent alleged that appellant was negligent in that the bath room in which respondent was left by the attendant was poorly lighted and equipped with hot pipes and radiators which were not guarded in any manner; that appellant was further negligent, in that its employee failed to exercise proper care in assisting respondent after he had been placed under the shower, and that appellant was further negligent, in that it allowed the temperature of the room and the vapor therein to rise to such a degree as to render respondent unconscious. These questions of negligence were, by the court, submitted to the jury for its consideration. The evidence leaves it uncertain as to just how respondent received the injuries of which he complains.

Respondent testified, in part, as follows, as to what happened after he entered the rooms in appellant's plant set apart for bathing:.

"Q. Where were you taken to? A. It appears to me I was led to the right for maybe ten or twelve feet

and passed through a door to the left and into a passageway; then it seems to me I turned to the left down that passageway where I hung my clothes, and from there into a room, into a large room, maybe ten by twelve. Q. Was there a table and some sheets in there? A. I did not see any table. There was something like a platform or steps; I went along them and found the foot bath, and found the temperature right. When I am in a room like that, I know where I am. Q. Did the man go with you from the place where the register was, into that room? A. Yes, sir, he went with me into the room. Q. What did you and he do when you got into that room? A. The natural thing; he seemed to go on about his affairs and left me there. Q. Where were you in that room,—where did he lead you? A. Well, of course, I have only a faint recollection about that. Q. Did he take you up on top of the platform? A. I don't think so. A. Did you sit down on the steps there? Mr. Bonneville: That is objected to as leading. Q. What did you say about a foot bath? A. I tested the temperature of the water in the foot bath, and I was satisfied it was all right. Q. What did you do with reference to the foot bath? A. I did not do anything more than to leave my feet in there and sat down on the bench or seat or whatever it was. Q. What did the attendant do then? A. He was gone out; he had dismissed himself. Q. Have you any idea of about how long he stayed out there and how long you sat there? A. No. Q. Did he come back in? A. He says he came in, and I am pretty well satisfied he did, and asked me how I was getting along, and I said I am all right. Q. What did he do then? A. Then, my recollection is after I came to, he said he came,— Q. But I do not want to get to that yet. I want to know what he did, whether he left you with your feet in the foot bath? A. Yes, sir, he did. Q. For how long? A. I have no recollection of that. It might have been twenty minutes, or more or less. Q. Did you go under the shower bath at all? A. Yes. Q. How did you happen to get under that? A. He came in and took me to the shower, and I remember I felt of the water, and he immediately left me. Q. Who

prepared the foot bath? A. I do not know; it was already there. Q. Did the attendant say anything to you about using the foot bath? A. No, I am familiar with that; he did not say anything about that. Q. When he left you under the shower bath, did he stay there with you or go away? A. Went away. I think he said he had to do something else; 'you are all right,' and I thought I was. Q. Did he turn the water on in the shower bath? A. Yes, and that is the last that I remember. Q. Did you become unconscious while you were under the shower bath? A. I think so; I do not know just when, but I think it was there. Q. When after that do you first remember becoming conscious? A. I remember becoming conscious,—I was on the bed."

Respondent, on further direct examination, testified in answer to questions propounded to him by his counsel:

"Q. When you were in the bathroom, did anything happen to you? A. Not that I know of. Q. Did you get against any pipes or anything in there? A. I don't think so, I have no recollection of it. . . . Q. What is that scar on the side (referring to a scar on respondent's head)? A. That is from the burning. Q. And this scar here,—is that from the burning? A. I suppose it is; but here is a bruise that I always presume that I got from pitching forward onto the radiator."

Whether or not respondent was injured by falling against a hot radiator or steam pipe, or whether he was scalded by live steam or hot water, is entirely a matter of speculation. It nowhere appears from the testimony that the appliances in and about the room in which respondent was injured were negligently constructed or installed, or that there was anything unusual or dangerous in the position thereof in the room, or that good practice required that they be guarded in some manner. There is no testimony in the record concerning the temperature of the room in which re-

spondent was taking the shower, or as to the degree of heat of the water. Respondent does not claim that he was conscious of any unusual degree of heat. It clearly appears that, had respondent not become unconscious, he would have suffered no hurt. What caused respondent to become unconscious, is uncertain; he may have gone to sleep and fallen, striking his head and becoming unconscious from the blow; he is uncertain as to when he lost consciousness; we have little to guide us save the facts that respondent was in the bath house, and was badly burned while there.

Respondent testified that, on the day he was injured, he was well, save for a slight touch of malaria, to correct which he desired the hot bath, and it is not suggested that he told appellant's agent who was in charge of the bath house that he needed the services of an attendant because of any physical infirmity under which he was suffering. He stated that he desired the service of an attendant, but does not claim that he asked for any unusual attention, or that the attention which he did receive was other than that which he required or expected.

There is no direct evidence in the record of any negligence on the part of appellant. If the verdict in favor of respondent is to stand, it must be because, from the mere fact of respondent's injury, the jury were warranted in finding negligence on the part of appellant.

Respondent cites a case *(Meyer v. McNutt Hospital,* 173 Cal. 156, 159 Pac. 436) in which it was held that a patient in a hospital, who, while in an unconscious or semi-conscious state, suffered burns from a hot water bottle placed upon him by a nurse, was entitled to recover as for negligence, and contends that this and similar cases are in point here. It seems to us that such cases are clearly to be distinguished from the case at bar. A patient in a hospital, who is semi-

conscious or is wholly unconscious from the influence of an anesthetic, is known by all to be helpless in the hands of his nurse, and is cared for on that basis. In the case now before us, appellant's agents had no reason for supposing that respondent would become unconscious or helpless, and furnished respondent with that service which respondent, as a normal man in possession of all his faculties, requested. Respondent testified that he had, for years, been in the habit of taking baths of the same general kind as that furnished him by appellant, although the occasion of his injury was the first time he had patronized appellant's establishment. Such a bath as that which respondent wanted consumes considerable time; he testified that he sat with his feet in the foot bath for probably twenty minutes before going under the shower. The fee demanded by appellant for the bath was only fifty cents. Respondent expected to pay more, and was surprised at the low charge made, but he does not claim that he expected for this charge, or for any charge which he might have expected to pay, to have an attendant constantly with him during the duration of his bath. He does not claim that he made any objection when the attendant left him alone while he was taking his foot bath, or when he was placed under the shower, or that he at any time requested the attendant to remain, or to return at any particular time. It is perfectly clear from the evidence that respondent, up to the time he became unconscious, was receiving exactly the service which he expected, and that he was entirely content therewith.

Appellant cites the case of *Warren v. Werther,* 182 App. Div. 783, 169 N. Y. Supp. 709, affirmed on appeal, 228 N. Y. 537, 126 N. E. 924. In that case, it appeared that the plaintiff entered a Turkish bathhouse and was directed to the "hot room," which he entered,

and in which, after conversing with some other bathers, he sat down in a chair, in which position he remained for a length of time which he estimates as from ten to fifteen minutes. After the lapse of that period of time, he became unconscious, and while in that condition was badly burned. The room in which plaintiff was injured was furnished with chairs standing along the wall, in front of which was a strip of carpet. The remainder of the floor, which was of white marble, was uncovered. The case was submitted to the jury on two theories of negligence: one, that plaintiff was entitled to reasonable protection from the bath house attendants, and the other that the floor of the hot room was not sufficiently covered and that to leave it uncovered, constituted negligence. From a judgment in favor of plaintiff rendered on the verdict of the jury, the defendant appealed to the appellate division of the supreme court. It appeared that the plaintiff was an experienced bather, and that he asked for no instructions as to what he should do when he entered the bath house. His appearance was normal, although there was testimony in the case to the effect that he was suffering from some organic weakness of the heart. There was no testimony to the effect that the bathing rooms were negligently constructed or that the appliances were defective. The court said:

"Without proof of the length of time during which plaintiff was unconscious, and without proof of any negligence in the operation of the defendant's business it would not be possible to hold the defendant liable upon this record, except upon the theory that the defendant would be expected to have attendants continually on service in said hot rooms, which of course would be unreasonable to expect, and difficult, if not impossible, to execute. Where a person apparently in good health and condition presents himself for the use of the accommodations provided in a public bath, I

believe the proprietor thereof is justified in believing that the patron is in fit condition to use the bath, knows what he is about, and can safely be permitted to make use of the bathing privileges as ordinarily conducted.''

The judgment in plaintiff's favor was reversed, which judgment was affirmed by the court of appeals, that court approving the opinion of the appellate division, stating

'' . . . that upon the whole case there was no theory upon which defendant could be held liable for negligence.''

The supreme court of New Jersey, in the case of *Rom v. Huber,* 93 N. J. Law 360, 108 Atl. 361, affirmed in 94 N. J. Law 258, 109 Atl. 504, holds that the proprietor of a bathing establishment owes to his customers a duty to exercise reasonable care to maintain the premises in a safe condition, but he does not insure the safety of his patrons against accident, and his duty to patrons is satisfied when he uses reasonable care to maintain the premises in a safe condition for their proper use by the patrons.

This court, in the case of *Hansen v. Seattle Lumber Co.,* 31 Wash. 604, 72 Pac. 457, reversing a judgment for personal injuries rendered in plaintiff's favor upon the verdict of the jury, says:

"In order for the respondent to recover for his injury, it was necessary for him to show not only that the appellant had been guilty of negligence, but that such negligence was the cause of his injury. It is not necessary, of course, that the facts be proven by direct evidence. Circumstantial evidence of the fact is sufficient. But there must be some evidence, either direct or circumstantial, that there was negligence on the one side, and injury resulting in damages on the other, and that the injury and damages followed the negligence, and were produced thereby. The evidence here falls far short of this. It may be true

that there was evidence before the jury from which negligence could be inferred. Doubtless it was the appellant's duty to inform the respondent of the hidden or latent dangers connected with the operation of the machine, and it was negligent in failing to perform that duty; and had it been shown by evidence, either direct or circumstantial, that the injury was caused by some one or more of the hidden or latent dangers which the respondent had not been warned against, the appellant would be liable in damages for his injuries. But there is no direct evidence as to the cause of the injury, and it is not proving his case by circumstantial evidence for the respondent to show that there were causes, for which the appellant would be liable, which could have produced the injury, without showing that it could not have been produced in any other manner, or in a manner for which the appellant would not be liable.''

In the case last cited, this court quotes with approval from the opinion of the supreme court of the United States in the case of *Patton v. Texas & Pacific R. Co.,* 179 U. S. 658, in which that court said:

''The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence.''

In the case of *Allen v. Northern Pacific R. Co.,* 35 Wash. 221, 77 Pac. 204, 66 L. R. A. 804, the plaintiff appealed to this court from an order granting the defendant's motion for a new trial, a jury having returned a verdict in plaintiff's favor, the trial court having granted the new trial upon the sole ground that the evidence failed to show any negligence on the part of the defendant. The plaintiff, a passenger on one of respondent's trains, was injured, as he claimed, by having been thrown from the train by a sudden lurch or jerk thereof. The appellant contended that,

whenever a passenger on a train was injured by something which was under the control of the carrier, the fact of the injury is itself *prima facie* evidence of negligence on the carrier's part. The order granting a new trial was affirmed, this court quoting from the opinion in the case of *Klepsch v. Donald,* 8 Wash. 162, 35 Pac. 621, in which it was stated:

"A passenger on a railroad train is injured, and the fact of injury alone does not sustain a charge of negligence; but if the train was derailed by reason of a broken wheel, the presumption arises that the carrier was negligent in not providing a sound one."

In the case of *Peterson v. Union Iron Works,* 48 Wash. 505, 93 Pac. 1077, this court affirmed a judgment of the superior court dismissing an action for damages for death of plaintiff's husband after granting a nonsuit at the close of plaintiff's case. The deceased was injured while operating a ripsaw in defendant's factory. No witness was produced who saw the accident or could explain how it happened. Plaintiff urged the theory that a piece of board had struck the saw while the latter was in motion, and had been thrown violently against the deceased, causing his death, and that such an accident could not have happened had the saw been adequately guarded. Plaintiff contended that the jury were authorized to draw this inference from the testimony. This court again quoted from the case of *Patton v. Texas & Pacific R. Co., supra,* and held that the evidence was insufficient to support a verdict in plaintiff's favor.

To the same effect are the opinions of this court in the cases of *Olmstead v. Hastings Shingle Mfg. Co.,* 48 Wash. 657, 94 Pac. 474; *Whitehouse v. Bryant Lum. & Shingle Mill Co.,* 50 Wash. 563, 97 Pac. 751; *Weckter v. Great Northern R. Co.,* 54 Wash. 203, 102 Pac. 1053;

*Lewinn v. Murphy,* 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912D 433, L. R. A. 1917E 198; and *Patrick v. Spokane & Eastern R. & P. Co.,* 117 Wash. 317, 201 Pac. 23.

In the case of *De Yoe v. Seattle Electric Co.,* 53 Wash. 588, 102 Pac. 446, 104 Pac. 647, 1133, an appeal by plaintiff from an order granting judgment notwithstanding the verdict on defendant's motion, this court held that the doctrine of *res ipsa loquitur* did not apply, plaintiff having contended that the fact that a cable car upon which plaintiff was riding started with a sudden jerk, throwing a standing passenger against a window which broke and injured plaintiff, showed a state of facts from which negligence on the part of defendant should be presumed. This court says that, in cases in which the doctrine contended for by plaintiff had been applied, it had appeared from the nature of the accident itself, not only that the accident occurred, but also that it could not have occurred without some negligence on the part of the defendant, the character and cause of which, if known at all, would be peculiarly within the knowledge of the defendant. In the opinion, this court quotes from the decision in the case of *Firebaugh v. Seattle Elec. Co.,* 40 Wash. 658, 82 Pac. 995, 111 Am. St. 990, 2 L. R. A. (N. S.) 836, in which it was stated:

"The rule of *res ipsa loquitur* is based upon the apparent fact that the accident could not have happened without negligence on the part of the carrier; or, upon the literal meaning of the expression, that the thing itself speaks, and shows *prima facie* that the carrier was negligent."

The judgment of the lower court was affirmed and the opinion was adhered to by a majority of the court after a hearing *En Banc.*

In the case of *Lynch v. Ninemire Packing Co.,* 63

Wash. 423, 115 Pac. 838, L. R. A. 1917E 178, it was held that the doctrine of *res ipsa loquitur* was not applicable to a case based upon injuries received by plaintiff from the explosion of a vat containing hot tallow, of which vat appellant was in charge. Plaintiff contended that it appeared from the evidence that he was properly using an instrumentality, furnished by his employer, which failed to perform its functions and exploded without fault on his part, and that, under the authorities, the doctrine of *res ipsa loquitur* should be held to apply. The court held that the occurrence of the accident raised no presumption of negligence, and that a motion for nonsuit had been properly granted by the trial court.

In the case of *Valentine v. Northern Pac. R. Co.*, 70 Wash. 95, 126 Pac. 99, plaintiff had been injured by the automatic closing of a door on a railroad car. Plaintiff contended that the doctrine of *res ipsa loquitur* should apply. This court held that that doctrine had no application to the case presented; that there was no evidence that the door closed when it should not have closed, or that the spring operating the same did not properly perform the function for which it was intended. The court held that the contention of the plaintiff that the passage way was improperly lighted presented a question for the jury, but that no question was presented in so far as any defective appliance was concerned.

In the case of *Johnson v. Columbia & Puget Sound R. Co.*, 74 Wash. 417, 133 Pac. 604, it was held that the doctrine of *res ipsa loquitur* should not be applied, plaintiff's testimony having been to the effect that he was working as a blacksmith's helper, and that a piece of iron, in some unexplained manner, fell, causing a pair of tongs to strike plaintiff and injure him. This court says, referring to the rule invoked:

"We find nothing in the record in this case which brings it within the rule stated. The cause of the iron slipping from between the hammer and the die is not explained in the evidence. It was necessary for the appellant to show that this was caused by defective machinery or by some extraordinary or negligent act over which the respondent had control."

The judgment dismissing the action upon granting a nonsuit, was affirmed.

In the case of *Toler v. Northern Pac. R. Co.*, 94 Wash. 360, 162 Pac. 538, it was held that the doctrine of *res ipsa loquitur* did not apply to the breaking of a drawbar pin on a locomotive coupling, and that such breaking did not impute a defective condition which would support a finding of negligence on the part of defendant. This court says:

"There could be nothing more than a guess or conjecture that the condition of the pin or the drawbar was defective at the time the accident happened.

"Under these facts, therefore, we are constrained to hold that there is no room for the application in this case of the principle of *res ipsa loquitur*, and that respondent failed to establish a *prima facie* case of negligence by any evidence whatever against appellant."

In the case of *McClellan v. Schwartz*, 97 Wash. 417, 166 Pac. 783, this court said:

"Hence it has been held that one charged under the doctrine of *res ipsa loquitur* is not to be put to his proof unless there is some showing of cause—careless construction, lack of inspection, or misuser. The cause of the accident—the offending instrumentality—must be identified before one charged is put to answer."

Respondent cites several decisions of this court in which the doctrine of *res ipsa loquitur* has been applied. In the first of these, the case of *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325,

126 Am. St. 870, 16 L. R. A. (N. S.) 931, this court, while recognizing that the rule in question "must be invoked sparingly and applied only where the facts and demands of justice make its application essential," held that the trial court erred in granting defendant's motion for a nonsuit. It appeared from plaintiff's testimony that a basket, being a part of defendant's overhead carrier system used in its dry goods store for conveying merchandise to and from the wrapping counter, fell upon plaintiff injuring her. In this case, the exact cause of the injury clearly appeared, and it did not appear that any act by, or condition of, the plaintiff, had anything to do with the receipt by her of the injuries of which she complained.

In the case of *Wodnik v. Luna Park Amusement Co.*, 69 Wash. 638, 125 Pac. 941, 42 L. R. A. (N. S.) 1070, it appeared that the plaintiff was injured because of a defect in a mallet which he was using in operating a mechanical amusement device maintained by defendant. In this case also, the evidence as to exactly what caused the injury was clear. The distinction between the case cited and the case at bar is, for that reason, plain.

In the late case of *Poth v. Dexter Horton Estate*, 140 Wash. 272, 248 Pac. 374, the doctrine of *res ipsa loquitur* was held applicable to a case where the plaintiff, about to enter a building owned and conducted by defendant, was struck by a window shade falling from the building and injured. The plaintiff was about to enter the building from the street in a perfectly ordinary manner, and in this case also it clearly appeared exactly what caused her injury. Such a state of facts plainly shows a case of negligence, and the doctrine invoked by respondent was properly applied.

This court has also held that the doctrine of *res ipsa loquitur* is properly applied to a case in which plaintiff proved injuries due to blasting caused by defendants. *Briglio v. Holt & Jeffery,* 85 Wash. 155, 147 Pac. 877. In this case, also, the precise cause of the injury was definitely established.

In the late case of *McGinn v. North Coast Stevedoring Co.,* 149 Wash. 1, 270 Pac. 113, this court held that the breaking of a ring on a hoisting tackle was sufficient to justify the application of the doctrine, but in this case again was established a definite defect in some appliance owned and maintained by the defendant.

We have reviewed these cases at length, as the question before us is important, and we conclude that in the record before us can be found no testimony which supports the finding of the jury, in respondent's favor, that appellant was guilty of negligence. The appliances and apparatus in the bathing establishment maintained by appellant, as far as the record shows, were usual and ordinary and free from defects. It does not appear that the temperature of the room or of the water was unreasonably high. Respondent received from appellant's employees the service and attention which he desired and apparently thought reasonable. The fact that respondent became unconscious while in the course of receiving his bath, and thereby became burned through some means, exactly how we do not know, was extremely unfortunate, but we find no testimony in the record which furnishes a basis for any finding of negligence on the part of appellant.

That respondent would become unconscious while bathing, was a possibility not reasonably to be anticipated in the exercise of ordinary care by appellant's employees. How long respondent remained unconscious, does not appear; it may have been for only a short time, as an unconscious person lying against hot

pipes or in hot water, or exposed to live steam, could be badly burned very quickly.

Respondent was the victim of a most unfortunate accident, but the record does not disclose any basis for holding that any negligence on the part of appellant caused his injuries.

The judgment appealed from is reversed, with instructions to dismiss the action.

FULLERTON, TOLMAN, and HOLCOMB, JJ., concur.

FRENCH, J. (dissenting)—I think this is a case where the doctrine of *res ipsa loquitur* is applicable—respondent employed an attendant and should not have been permitted to become badly burned. I therefore dissent.